[Argued December 2, 1892; decided January 2, 1893.]

## H. B. MILLER v. SYLVESTER PENNOYER ET AL.

[S. C. 31 Pac. Rep. 830.]

1. VOTERS AND ELECTIONS—AUSTRALIAN BALLOT LAW.—The exception in Oregon Act, 1891, ¿ 49, providing that the names of candidates for electors for president and vice-president shall be arranged in groups as presented in the several certificates of nomination, relates only to the manner ( f arranging the names upon the ballot, and not to the former provision that the name of each person nominated shall be printed upon the ballot in but one place; and the law is violated by printing in two groups of electors the name of one person nominated by two parties.

2. VOTERS AND ELECTIONS—BALLOTS.*—In the absence of an affirmative declaration in the state election law, that a ballot containing the name of a candidate in more than one place is void and shall not be counted, an error or mistake of the county clerk in printing the name of the same person in two groups of electors on the "official ballot" will not require the rejection of the ballots, although the statute provides that the name shall be printed in but one place. *Allen* v. *Glynn*, 17 Col. 338, approved.

3. ELECTIONS—MANDATORY STATUTE.—Section 47 of the Australian Ballot Act (Laws 1891, 23,) requiring the county clerk to print all the official ballots, is mandatory in that it requires the clerk to strictly comply with its provisions, but not in the sense that the voter will lose his vote if the clerk commits an error in printing the names.

Marion County: GEO. H. BURNETT, Judge.

Plaintiff appeals.    Affirmed.

The appellant Harry B. Miller applied to the circuit court of Marion County for a writ of mandamus to the respondents Sylvester Pennoyer and Geo. W. McBride, requiring the respondent Geo. W. McBride, as secretary

---

*NOTE.—The subject of defects and irregularities in ballots under "Australian Ballot" statutes is discussed with a review of English, Australian, and American decisions in a note to the Missouri case of *Bowers* v. *Smith*, in 16 L. R. A. 754; while the subject of marks or devices to distinguish ballots is presented with a full review of the authorities in notes to the cases of *Rutledge* v. *Crawford*, 91 Cal. 526 ( 25 Am. St. Rep. 212; 13 L. R. A. 761 ); *Allen* v. *Glynn*, 17 Col. 338 ( 31 Am. St. Rep. 304; 15 L. R. A. 743 ); *Parvin* v. *Wimberg*, 130 Ind. 561 ( 30 Am. St. Rep. 254; 15 L. R. A. 775 ); *DeWalt* v. *Bartley*, 146 Pa. St. 529 ( 28 Am. St. Rep. 814; 15 L. R. A. 771 ); *State* v. *McElroy*, 44 La. Ann. 796 ( 16 L. R. A. 278 ); *People* v. *Shaw*, 133 N. Y. 493 ( 16 L. R. A. 606 ); *State* v. *Black*, 20 Atl. Rep. ( N. J.) 255 ( 16 L. R. A. 769 ); *State* v. *Walsh*, 17 L. R. A. 364; *State* v. *Ellis* ( N. C.) 17 L. R. A. 382; *State* v. *Saxon*, 30 Fla. 668 ( 18 L. R. A. 721; 32 Am. St. Rep. 46 ).—REPORTER.

of state, to abstain from counting certain votes illegally cast for one Nathan Pierce for presidential elector at the November election, 1892, and further requiring said respondent to count of the votes legally cast only those where the name of the said Nathan Pierce appears but once, in the Peoples' Party column, and to reject ballots where the name of said Nathan Pierce was twice printed on the ballot, when it appeared in the Democratic column; and, furthermore, commanding and requiring respondent Sylvester Pennoyer, as governor of the state of Oregon, to issue a certificate of election for the office of presidential elector to the appellant.

Briefly stated, the facts are these: The Democratic Party, in convention assembled, nominated four electors, as provided by law, as did also the People's Party. Later, one of the Democratic electors (Robt. A. Miller) withdrew from the ticket, and thereafter, by reason of the vacancy occurring on the Democratic ticket, the Democratic central committee, as provided by law, nominated Nathan Pierce to fill said vacancy, which nomination, as is alleged in the writ, "was duly certified to the secretary of state as by law required." Mr. Pierce filed his acceptance as a nominee of the People's Party with the secretary of state, but did not file any acceptance of the nomination of the Democratic Party. In the counties of Clackamas, Klamath, Clatsop, Lake, Gilliam, and Yamhill, the county clerks caused Pierce's name to be printed twice on the ballots, viz: once under the group of electors nominated by the People's Party, and once under the group of electors nominated by the Democratic Party. It is alleged in the writ that this action of the clerks was illegal, and that the votes cast for Pierce in said counties should not be counted; that if they are not counted the appellant will have received a plurality of the votes cast at said election, and will be entitled to a certificate of election as a presidential elector, otherwise the said Pierce will have received a plurality of said votes; that the said Geo. W. McBride, secretary of state,

threatens to count said illegal votes so returned by the said respective county clerks for the said Nathan Pierce, and that the said Sylvester Pennoyer, governor of the state, threatens to issue a certificate of election to the said Nathan Pierce, and to decline to issue a certificate of election to the petitioner.

The respondent Geo. W. McBride appeared and filed a demurrer to the writ, specifying several grounds of objection, but the principle objection thereto, and the one relied upon, is that the same does not state facts sufficient to entitle the appellant to the relief demanded, or to any relief.    The demurrer was sustained, and the plaintiff appeals.    Affirmed.

*Raleigh Stott*, and *Alfred F. Sears, Jr. (Boise & Stott*, and *McGinn & Simon* on the brief), for Appellant.

The provisions of the Australian Ballot Law (Session Laws, 1891, 9) clearly require the rejection of all ballots upon which the name of the candidate shall be printed in more than one place: Sections 49, 27, 47.    The question decided in case of *People* v. *Board of Canvassers*, 129 N. Y. 395 (14 L. R. A. 646), is identical with the question that arises in this case.    The New York law forbids the casting of a ballot having a distinguishing mark on the outside thereof, and prohibits the canvasser from counting any such ballot.    In this case it appeared that certain ballots bearing the number of one election district had been voted in another.    The court decided that these ballots should not be counted.    In *West* v. *Ross*, 53 Mo. 350, the statute provided that "no ballot not numbered should be counted," and the question arose as to whether ballots cast for the successful candidate for county clerk not numbered should be excluded from the count.    It was conceded that no fraud was intended by the inspectors in failing to number the ballots, but it was occasioned by an inadvertence on their part.    It further appeared that the number of ballots counted corresponded with the number of votes appearing on the poll list.    The court, however,

held that these votes were void.  In the late case of
*Fields* v. *Osborne,* 60 Conn. 544 (12 L. R. A. 551), it was
held that when the law provides that ballots shall contain
only the names of the candidates, the office voted for,
and the name of the political party issuing the same, in
addition to the official indorsement, all ballots not con-
forming to these requirements were void.   See also *Tal-
cott* v. *Philbrick,* 59 Conn. 478 (20 Atl. Rep. 436; 10 L. R.
A. 150), and *Oglesby* v. *Sigman;* 58 Miss. 502.

The object of the law considered in all these cases was
to secure a pure ballot; the object of the law under con-
sideration in this case is the same.   If we would maintain
the integrity of this law, it must be construed, or rather
enforced, as it is written.   The expressed purpose of this
law was to prevent frauds and punish crimes affecting
the right of suffrage, but its object will be completely
nullified if that part of section 49 which provides that
"the name of each person nominated shall be printed
upon the ballot in but one place," is construed to be
merely directory.   The importance of this law makes
the provision mandatory.   If a candidate's name may be
printed twice on a ballot, then there is no limit to the
number of times it may appear,— ballots of ever kind,
color, and description may be used, and the name may be
in every group on the ticket.

*Thomas O'Day,* and *Daniel R. Murphy ( Silvestone &
Brodie* on the brief ), for Respondents.

The fair and reasonable construction to be placed
upon the statute is, that the political designation is to be
placed opposite to the candidate for president and vice-
president respectively, and the only thing to be placed
opposite the name of the candidate for elector is the
city, town, or county where he resides.   The electoral
candidates under this statute should not be considered
to be Republican electors, Democratic electors, People's
Party electors, or Prohibition electors, but should only
be considered as electoral candidates for a Republican,

Democratic, Peoples' Party, or Prohibition nominee for president and vice-president; and the mandate of the law is that the political party or complexion should be added opposite to the name of said candidates for president and vice-president, and the city, etc., opposite the name of the electoral candidate (presumably for identification alone).

Then, again, the statute directly imposes the obligation of printing in groups the electoral candidates in presidential elections, and directs how they shall be printed, not in alphabetical order under the distinction of the office, as in ordinary elections, but in groups as presented in the several certificates of nomination.

The record here discloses that Nathan Pierce was nominated as a presidential elector by the People's Party, and duly accepted said nomination, and that thereafter said Nathan Pierce was nominated by the Democratic Party as presidential elector. For this court to say that Mr. Pierce's name could not be printed in the Democratic group of electors because he had theretofore been nominated for a like position by another political party, is not consistent with the spirit and reason of the act. The general provision that a candidate's name shall appear but once on a ballot is controlled by the exception in the case of presidential electors, and it cannot be presumed that at the time the statute was enacted the legislature could have foreseen a double nomination. A statute somewhat similar to the one under consideration has been so construed in *Northcote* v. *Pulsford*, 44 N. J. L. S. 217.

It is the duty of the chief executive of the state to issue certificates of election to all persons duly elected; he must do it as the chief executive of the state, and he cannot avoid that responsibility. The only office of a writ of mandamus is to compel an officer to act,—to exercise his discretion. The office of this complaint, and the only object of this action, is not to compel the defendants to act, but to direct them in what manner and how the act shall be performed; that is, to control their dis-

cretion.   This cannot be done.   In support of these views
we cite the following cases :   *Rice* v. *Austin,* 19 Minn, 103 ;
7 Lawson Pub. R. & Rem. § 3784 ;   *The People* v. *The Gov-
ernor,* 29 Mich. 320 ;   *Hawkins* v. *The Governor,* 1 Ark. 570 ;
*State* v. *The Governor,* 25 N. J. 331 ;   *People* v. *Bissell,* 19
Ill. 229 ;   *Bennet, petitioner,* 32 Me. 510 ;   *Mauran* v. *Smith,*
8 R. I. 192 ;   *U. S.* v. *Black,* 128 U. S. 40.

*Geo. E. Chamberlain,* attorney-general, for Respond-
ents.

The portion of section 49 to which we refer provides
that "the names of the candidates for each office shall be
arranged under the designation of the office in alphabet-
ical order according to surnames, except that the names
of candidates for the offices of electors of president and
vice-president shall be arranged in groups as presented
in the several certificates of nomination."   How could
any other construction be placed upon the act than that
adopted by the county clerks in the several counties
named, and effect be given to the portion of the act
just quoted ?   Section 49 is incomplete.   At the end
thereof the law-makers evidently intended to prescribe
the form of ballot, but failed to do so, and the enrolled
bill, of which the court can take judicial notice, seems
to have originally had embodied therein a form of ballot,
but it is lacking both in said enrolled copy and in the
published law.   The only sections providing for the
printing of the ballots required to be used at the elec-
tion are sections 47, 48, and 49, and under these we con-
tend that the clerks were allowed a wide discretion in the
matter of printing ballots.   Taken as a whole, the statute
plainly warrants the action of the clerks in placing the
name of Pierce under each group of electors ; and aside
from that, the well-established rules of construction of
such statutes require that this section shall be considered
merely directory :   *People* v. *Cook,* 14 Barb. 298 ; *Dishon* v.
*Smith,* 12 Iowa, 218 ;   *Merchant* v. *Langworthy,* 6 Hill, 646 ;
*People* v. *Peck,* 11 Wend. 604.

Ignorance, inadvertence, mistake, or even intentional wrong on the part of local officials should not be permitted to disenfranchise a district: *Jones* v. *The State*, 1 Kan. 273–276; *Gilleland* v. *Schuyler*, 9 Kan. 569; McCrary, Elections, § 192; Paine, Elections, §§ 497, 502. The distinction seems to be that provisions of a statute which fix the day and place of election and the qualifications of the voters are substantial and mandatory, while those which relate to the mode of procedure in the election, and to the record and return of the results, are formal and directory: Paine, Elections, §§ 498 and 499, and authorities cited.

Sections 27 and 29, and the latter part of section 49, of the act under consideration, show clearly that the provisions of the first portion of section 49, relied upon by the appellant, are not mandatory, but merely directory. The ballot must be counted if it is possible to determine the elector's choice, and there is no provision which requires a ballot to be rejected because of any informality in its form. No ballots are to be rejected except such as are not white, and are not furnished under the provisions of this act, or such as are so defective that the choice of the voter cannot be determined. It has been held that where the name of a candidate appears more than once upon a ballot, and the ballot is voted in this condition, it does not invalidate the vote: *Budd* v. *Holden*, 28 Cal. 137; *Kirk* v. *Rhoads*, 46 Cal. 398; *State* v. *Pierce*, 35 Wis. 93; *State* v. *Elwood*, 35 Wis. 615; Paine, Elections, § 553; 6 Am. & Eng. Enc. 345; McCrary, Elections, § 503; Ashfield's Case, Cushing Election Cases, 583.

Under our statute, even if the name of Pierce had not been marked out under either group, it is questionable, under the authorities cited, whether the judges of election could refuse to count the vote. When, however, the name was crossed out under one group, no question could possibly arise, the voter having clearly expressed his intention by erasing the name in one or the other place, and it was unquestionably the duty of the judges of elec-

tion to count all ballots when the name was crossed out once: *Northcote* v. *Pulsford*, 44 L. J. N. S. 217, C. L.; *Barnum* v. *Gilman*, 27 Minn. 466; *People* v. *Clute*, 50 N. Y. 466.

It seems to be settled that as to those things over which the voter has control, such statutes as the one under consideration are mandatory; and as to those things over which he has no control, they are merely directory: *Kirk* v. *Rhoads*, 46 Cal. 398; McCrary, Elections, § 503; *State* v. *McKinnon*, 8 Or. 500.

The general principal which governs is, that while there should be a strict compliance with the provisions of a statute, yet when they are merely directory, such strict compliance is not essential to the validity of proceedings under such statute, unless they are declared to be therein. This is specially applicable when the rights of the public or third persons are concerned. The fundamental object of all election laws is the freedom and purity of the ballot. It is to be observed that the voter has no control whatever over the publication of the names of candidates or the form of the ballots. If for some defect in these particulars the ballot must be rejected, the door would be open to fraud. To overthrow the expressed will of a large number of voters for no fault of theirs, as we are asked to do, would be to defeat the purpose of all election laws, which is to obtain a full and fair expression of the wishes of the voters: *Allen* v. *Glynn*, 29 Pac. Rep. 673; approved in *People* v. *District Court*, 31 Pac. Rep. 342; *Bowers* v. *Smith*, 17 S. W. Rep. 760; *Kellogg* v. *Hickman*, 12 Col. 256.

BEAN, J.—This is a proceeding by mandamus to compel the respondent Geo. W. McBride, as secretary of state, in making the official canvass of the votes cast for presidential electors at the late election, as returned to him by the various county clerks, to abstain from counting certain votes alleged to have been illegally cast for Nathan Pierce, one of the candidates for electors nomi-

nated by the People's Party, in consequence of his sub-
sequent nomination by the Democratic Party and the
printing of his name on the official ballot in more than
one place, — that is, in both the People's and the Demo-
cratic group of electors, — although there is no claim or
pretense of fraud in such publication, or that Mr. Pierce's
name was unscratched on the ballot in more than one
place, when cast by the voter or counted by the officers
of election.    In Oregon the law requires the voter to
scratch out the names of those for whom he does not
wish to vote, leaving untouched the names of his chosen
candidates.    The fact that this case was advanced out of
its order, but recently submitted, and the necessity of an
immediate decision, as well as the pressure of official
business, renders it impossible for us to do more than to
state briefly the position of each party, and the conclu-
sion at which we have arrived after carefully examining
the questions presented on this appeal.

1.   By the act of 1891, commonly known as the "Aus-
tralian Ballot Law," it is made the duty of the several
county clerks to prepare and cause to be printed on a
certain character of paper, all ballots to be used, or
voted, at any election held under the provisions of this
act; and no ballots other than those so prepared and
printed shall be used, circulated, cast, or counted at any
such election.    Section 49 of the act, which prescribes
what the ballot shall contain, so far as material to the
question before us, provides that the ballots shall be
styled "official ballot," and "shall state the number and
name of the precinct and county they are intended for,
and the date when the election is to be held; shall con-
tain the names of all the candidates for offices to be filled
at that election, whose nominations have been duly made
and accepted as herein provided, and who have not died
or withdrawn, and shall contain no other names of per-
sons, except that, in the case of electors of president and
vice-president of the United States, the names of the
candidates for president and vice-president may be added

to the party or political designation; the name of the
city or town, or county, in which the candidate resides
shall be added to the name of each candidate; the name
of each person nominated shall be printed upon the ballot
in but one place, but there shall be added opposite thereto
the party or political designation, expressed in not more
than three words for any one party, as specified in the
certificate nominating him for the office. The names of
the candidates for each office shall be arranged under the
designation of the office, and in alphabetical order, ac-
cording to surnames, except that the names of candidates
for the offices of electors for president and vice-president
shall be arranged in groups as presented in the several
certificates of nomination.''

The contention for petitioner is, that the provision in
this section that the name of each person nominated
shall be printed upon the ballot in but one place, applies
to all ballots, whether to be used in a state or presidential
election, and the exception in the latter part of the clause
quoted refers only to the arrangement of the names upon
the ballot; while the contention for respondent is, that
the object and design of the latter clause is to except
candidates for presidential electors from the provision
against repeating names, and to preserve the identity
and unity of each electoral group or ticket "as pre-
sented in the several certificates of nomination," whether
the several groups contain the same or different names.
The proper construction of this section is indeed diffi-
cult to determine, and we have been unable to reach a
conclusion satisfactory to all the members of the court.
The majority of the court is of the opinion that in the
light of the rule of construction that a limiting clause or
proviso in a law is ordinarily confined to the last enact-
ment (*Friedman Bros.* v. *Sullivan,* 48 Ark. 213; 2 S. W. Rep.
785), the better view would seem to be that the exception
only relates to the manner of the arrangement of the
names upon the ballot, and not to the provision that the
name of each person nominated shall be printed upon

the ballot in but one place, and therefore the printing of the name of Mr. Pierce in both the People's and the Democratic group of electors was contrary to the provisions of the law.

To the writer of this opinion, the better view would seem to be that the object and design of section 49, in the light of the entire act, is to preserve the identity of the electoral ticket or ballot of each party as a unit; for it is provided that the names of candidates for the office of electors "shall be arranged in groups as presented in the several certificates of nomination," and that the "names of all the nominees of each party for electors may be upon the same certificate of nomination": Section 34. It is also provided, in effect, that a nominee to fill a vacancy shall be treated and considered in arranging and preparing the ballot the same as the original nominee, and in his place: Section 44. Hence, when Mr. Pierce was nominated to fill the vacancy caused by Mr. Miller's resignation, his name was, in legal contemplation, it seems to me, upon the certificate of nomination for electors by the Democratic Party, and was therefore one of the Democratic "group as presented in the certificate of nomination," and was properly so printed on the "official ballot."

2. But however this may be, and whatever may be the correct interpretation of section 49, we are all agreed that the mistake, if it was a mistake, in printing the name of Mr. Pierce on the "official ballot" in both the People's and the Democratic group of electors, did not deprive the voter who cast such a ballot of the elective franchise, or the candidate for whom it was cast of the benefit of such vote. Under the law as it now exists, neither a voter nor a candidate has any control or voice whatever in the arrangement and publication of the names or forms of the ballot, and the voter is either compelled to vote the "official ballot" as prepared by the county clerk, or not vote at all. In such case, in the absence of an affirmative declaration in the statute that

a ballot containing the name of a candidate in more than one place is void and shall not be counted, we are unable to agree to the doctrine that an error of the county clerk in construing a doubtful provision of the law should disenfranchise a large number of voters who are in no way responsible for the error or mistake. And such is the effect of the decisions under similar ballot laws: *Bowers* v. *Smith*, 17 S. W. Rep. 761, and 20 S. W. Rep. 101 (16 L. R. A. 754); *Allen* v. *Glynn*, 17 Col. 338 (31 Am. St. Rep. 304; 15 L. R. A. 743; 29 Pac. Rep. 670); *Northcote* v. *Pulsford*, 44 L. J. C. P. 217.

3.  The law is mandatory in the sense that it demands and requires the county clerks, in the preparation of the "official ballot," to strictly comply with all its provisions; but not in the sense that a voter's right to exercise its elective franchises will be lost because of some technical mistake of the county clerk in printing the names of candidates upon the ballot. Such a construction of the law would not only render an election invalid on account of an honest mistake of a county clerk, but would open the door to the gravest fraud. It would place the power in the hands of a dishonest officer to disenfranchise the voters of his county, as well as cause the defeat of any particular candidate. To defeat the will of the people, or a particular candidate, it would only be necessary to furnish the electors, or a part of them, with ballots slightly variant or differing from those prescribed by law. Unless the law is clearly mandatory, or in some way declares the consequences of a departure from its provisions, the court ought not to defeat the will of the people, when fairly expressed, because of some technical error or mistake in the form of the ballot; and in this case there is no claim or suggestion of fraud on the part of any one, or that the returns now in the possession of the secretary of state do not correctly represent the will of the people as expressed at the polls.

The public importance of this case, and our conclusions resulting as they do in an affirmance of the judg-

ment, have induced us to consider it upon the merits; but in order to avoid misconception, it is thought proper to remark that it is exceedingly doubtful whether the question sought to be litigated can properly be determined in a mandamus proceeding against the state canvassing board, who do not have, and who are not entitled to, the possession of, or an inspection of, the ballots as printed or cast at an election, and hence this cannot be considered as a precedent upon that point.

Affirmed.

---

[ Argued Nov. 22, 1892; decided Jan. 9, 1893; rehearing denied Jan. 23, 1893.]