[L. A. No. 6499. In Bank.—March 31, 1921.]

MARY RIDEOUT, Appellant, v. THE CITY OF LOS ANGELES (a Municipal Corporation), et al., Respondents.

[L. A. No. 6500. In Bank.—March 31, 1921.]

MARY RIDEOUT, Appellant, v. THE CITY OF LOS ANGELES (a Municipal Corporation), et al., Respondents.

[1] Elections—Form of Ballots—Requirements of General Law—Applicability to All Municipal Ballots.—The provisions of subdivision 6 of section 1197 of the Political Code, requiring the printing of the words "Municipal Ticket" on the back of municipal election ballots, and of subdivisions 10 and 11 of the same section, providing for the printing on the ballots of certain direc-

tions under the caption "Instructions to Voters," are applicable to municipal ballots presenting propositions to be voted upon as well as to municipal ballots containing names of candidates.

[2] ID.—ELECTION CONTESTS—DUTY OF COURTS.—In election contests, it is the duty of the court to validate the election if possible, and it must be held valid unless plainly illegal.

[3] ID. — MANDATORY AND DIRECTORY PROVISIONS DISTINGUISHED. — A violation of a mandatory provision of an election law vitiates the election, but a departure from a directory provision does not render the election void if there is a substantial observance of the law and no showing that the result of the election has been changed or the rights of the voters injuriously affected by the deviation.

[4] ID.—DETERMINATION OF CHARACTER OF PROVISION.—Whether or not a provision of an election law, the observance of which is not expressly declared by law to be essential to the validity of the election, is mandatory or merely directory, depends upon the character of the act prescribed; if the act enjoined goes to the substance or necessarily affects the merits or results of the election, it is mandatory, otherwise directory.

[5] ID.—SPECIAL MUNICIPAL ELECTION BALLOTS—OMISSION OF PRINTED INDORSEMENT "MUNICIPAL TICKET"—VALID ELECTION.—In the absence of proof of fraudulent intent on the part of the officials having charge of the printing of special municipal election ballots, the omission to print the words "Municipal Ticket" on the back of the ballots does not invalidate the election, since the indorsements "General Ticket" and "Municipal Ticket" called for by section 1197 of the Political Code are intended primarily for the convenience of the election officials.

[6] ID. — PRINTED INSTRUCTIONS TO VOTERS — VARIANCE FROM CODE FORM—VALID ELECTION.—A special municipal election is not void because the printed instructions to voters on the ballots covered a greater space in proportion to the face of the ballot than that contained in the form set out in subdivision II of section 1197 of the Political Code, since the law does not specify the size of the type to be used but merely provides a form in which the instructions are allotted a certain space.

[7] ID.—VIOLATION OF DIRECTORY PROVISIONS—WHEN FATAL.—Where departure from the directory provisions of an election law is of such a nature that a considerable number of electors or voters are thereby precluded from expressing their wills at the polls, thus preventing a free and fair election, the election cannot stand.

[8] ID.—BURDEN OF PROVING UNFAIRNESS.—Where violations of directory provisions of an election law are not so gross or radical as to give rise to a presumption of unfairness, the burden is upon the contestant to prove that unfairness resulted from such violations,

[9] ID.—PROCEEDING TO ANNUL SPECIAL MUNICIPAL ELECTIONS — IN-
FERENCE FROM FACTS PROVED—APPEAL.—In a proceeding to annul
two special municipal elections held at the same time as a general
municipal election, on the ground of defects in the form of the
special election ballots and resultant confusion of electors, an in-
ference drawn from the facts proved that the claimed defects
were a negligible factor and that the real reasons for the blank
and missing ballots were indifference and carelessness combined
with misunderstanding arising from the fact that the three elec-
tions were not consolidated, is not opposed to human experience
and reason, and cannot be disturbed by an appellate court.

APPEALS from judgments of the Superior Court of Los
Angeles County. Leslie R. Hewitt, Judge. Affirmed.

The facts are stated in the opinion of the court.

Edgar G. Pratt and Henry M. Willis for Appellant.

Jess E. Stephens, Charles S. Burnell, W. B. Mathews,
Lewis E. Whitehead, Ray C. Eberhard and Trent G. Ander-
son for Respondents.

LENNON, J.—The two above-entitled cases are taxpayers'
actions in the nature of equity proceedings to annul two spe-
cial municipal elections held in the city of Los Angeles on
June 3, 1919, and practically take the form of election con-
tests. (*Gibson* v. *Board of Supervisors,* 80 Cal. 359, [22
Pac. 225].) Being identical in nature and in points raised,
the two cases were consolidated for trial. The present ap-
peals are taken by plaintiff from judgments in favor of
defendants.

At the special election attacked in the first above-entitled
case, the question submitted to the voters involved the au-
thorization of the issuance of bonds to the amount of thirteen
million five hundred thousand dollars, for the purpose of
raising money to be expended partly in constructing and
acquiring works for supplying the city with electricity for
light, heat, and power, and partly in purchasing an electric
distributing system; the proposition presented at the special
election assailed in the second case was that of selling to
the Southern California Edison Company, for a period not
exceeding fifteen years, surplus electric energy which said
city might generate in excess of its own requirements, and

also of supplying the city of Pasadena with such surplus energy. These two special elections were called and held at the same time, with the same precincts and polling places, as the general municipal election of the city of Los Angeles, and the same individuals acted as officials in all three elections. No consolidation of the elections was effected, however, and separate ballots were used in the three elections. Both propositions submitted at the special elections received the required two-thirds affirmative vote, the results, as ascertained upon a recount, being as follows: Bond election, 46,462 in favor and 21,270 against, or 1,308 in excess of the requisite two-thirds; power sale election, 43,679 in favor and 21,246 against, or 397 more than the required two-thirds.

Alleged defects in the form of the ballots are the reasons assigned by appellant for the attempt to obtain the annulment of the special elections. According to the provisions of the Municipal Improvement Act, pursuant to which the bond election was held, that election was governed, in all particulars not recited in the ordinance calling the election, by the law covering and controlling the holding of municipal elections in the municipality. (Gen. Laws 1915, p. 1151.) The power sale election was held pursuant to the charter of Los Angeles (Charter of City of Los Angeles, sec. 2, subd. 4), and was likewise subject to the laws governing the holding of municipal elections. The ordinance calling the elections also expressly stated that the provisions for holding municipal elections applied. The charter of the municipality in question provides that all elections, except as otherwise provided in the charter, shall "be conducted and held in accordance with the provisions of the laws of the State for the holding of general elections in effect at the time." (Charter of City of Los Angeles, secs. 199, 202.) The form of the special election ballots here under consideration was, therefore, prescribed by section 1197 of the Political Code, which comprises the general law of the state upon the subject.

[1] The omission to print the words "Municipal Ticket" on the back of these ballots and the heaviness of the type and size of the space occupied by the printed instructions to voters are the particulars wherein the special election ballots are claimed to have been defective. Subdivision 6 of

section 1197 of the Political Code provides that "all ballots printed by the clerks, registrars of voters or secretary of a legislative body of any incorporated city or town, shall have printed in the same manner [i. e., below the stub and immediately at the left of the center of the ballot, in eighteen-point gothic capitals], on the back, the words 'Municipal Ticket.'" Subdivision 10 of the same section provides for the printing on the ballot of certain directions, under the caption "Instructions to Voters," and subdivision 11 provides, "Except as to the order of the names of candidates, the ballots shall be printed substantially in one of the following forms," followed by the form, in which the instructions to voters covers a smaller proportion of the face of the ballot than in the present case. These particular provisions of the section must be interpreted as applicable to municipal ballots presenting propositions to be voted upon as well as to municipal ballots containing names of candidates. That such is the interpretation necessarily to be accorded these provisions is made evident by the generality of the language as well as by the fact that ballots presenting propositions are, by several subdivisions, expressly brought within the operation of the section.

It is appellant's contention that the fact that the ballots in controversy varied in the particulars stated from the prescribed statutory form in and of itself invalidated the election. [2] It is a primary principle of law as applied to election contests that it is the duty of the court to validate the election if possible. That is to say, the election must be held valid unless plainly illegal. (*People* v. *Prewett,* 124 Cal. 7, [56 Pac. 619]; *State* v. *Board of Supervisors,* 35 N. J. L. 269, 277.) [3] Accordingly, a distinction has been developed between mandatory and directory provisions in election laws; a violation of a mandatory provision vitiates the election, whereas a departure from a directory provision does not render the election void if there is a substantial observance of the law and no showing that the result of the election has been changed or the rights of the voters injuriously affected by the deviation. (*Russell* v. *McDowell,* 83 Cal. 70, [23 Pac. 183]; *Tebbe* v. *Smith,* 108 Cal. 101, [49 Am. St. Rep. 68, 29 L. R. A. 673, 41 Pac. 454].) [4] Whether or not a provision, the observance of which is not expressly declared by law to be essential to the valid-

ity of the election, is mandatory or merely directory, depends upon the character of the act prescribed. If the act enjoined goes to the substance or necessarily affects the merits or results of the election, it is mandatory; otherwise directory. (*Murphy* v. *San Luis Obispo,* 119 Cal. 624, [39 L. R. A. 444, 51 Pac. 1085]; *Dennen* v. *Jastro,* 23 Cal. App. 264, [137 Pac. 1069]; *Parvin* v. *Wimberg,* 130 Ind. 561, [30 Am. St. Rep. 254, 15 L. R. A. 775, 30 N. E. 790].) Provisions prescribing minor details in regard to the form of ballots are held to be in a large measure directory, in so far as the voter is concerned, upon the theory that, where there are errors on the part of those intrusted with the preparation of ballots, the disenfranchisement of voters for these violations of the law over which they have no control would result in defeating the will of the people by technicalities, unless it appears that the mistakes in fact operated to prevent a free, fair and honest election. (*Dennen* v. *Jastro, supra; Miller* v. *Pennoyer,* 23 Or. 364, [31 Pac. 830]; *Olson* v. *City of Lemmon,* 33 S. D. 380, [146 N. W. 592]; McCrary on Elections, sec. 538.) It has been held that violations of statutes prescribing the dimensions of the ballots and the character of type and color of ink to be used in printing them do not, in themselves, render the election void; and an election was held valid where, in violation of the provisions of the election law, the marks on the face of the ballots were discernible on the back thereof, owing to insufficient thickness of the paper. (*Kirk* v. *Rhoads,* 46 Cal. 398; *Short* v. *Gouger* [Tex. Civ. App.], 130 S. W. 267.) An erroneous omission to print on the ballots instructions for voting a straight ticket and the erroneous designation of an office on the ballot as "councilman" instead of "trustee" were held not to invalidate the election. (*Jones* v. *State,* 153 Ind. 440, [55 N. E. 229].)

[5] There is no proof of fraudulent intent on the part of the officials having charge of the printing of the ballots in the instant case, and the deficiencies in the ballots under consideration were no more vital than in the instances enumerated. Section 1197 of the Political Code requires that the form prescribed must be "substantially" followed. The words "Municipal Ticket" on the back of the ballot are intended primarily for the convenience of the election officials. Section 1257 of the Political Code provides that, "At

all elections where a general ticket and a municipal ticket are used, the canvass of the general ticket shall be completed before the canvass of the municipal ticket is commenced.'' Clearly, the indorsements ''General Ticket'' and ''Municipal Ticket'' called for by section 1197 of the Political Code are designed to enable the election boards to distinguish and separate general and municipal tickets from a mere inspection of the backs of the ballots. In this case all three ballots were municipal ballots. **[6]** Considering the other alleged defect, the law does not specify the size of type to be used in the printed instructions to voters; it merely provides a form in which the instructions are allotted a certain space. It is claimed by appellant that the instructions on the special election ballots should have covered no greater space in proportion to the face of the ballot than they did in the prescribed form. Conceding this to be the case, nevertheless the variance in question did not alter the form in which the propositions to be voted upon were submitted to the voters, for there was neither a diminution in the number of words nor an unreasonably small size of type in the printing of the propositions, the words ''yes'' and ''no'' were printed to the right of the proposition in large type, followed by ample space for the marks of the voters. Nothing of substance, either as to content or arrangement, was omitted or materially changed, and the ballots must, therefore, be pronounced adequate.

**[7]** However, while ballots which fail to comply with directory provisions may fulfill legal requirements in the sense that they are not lacking in fundamentals, it may still be true that the departure from the directory provisions was of such a nature that it precluded a considerable number of electors or voters from expressing their will at the polls, thus preventing a free and fair election. If the defects in the ballots actually produced that result, the elections cannot stand. (*Tebbe* v. *Smith, supra; Dennen* v. *Jastro, supra*.) Appellant claims that the violations in the instant case were the direct cause of confusing a considerable number of electors so that they refrained from voting.

**[8]** We do not think the violations of the directory provisions were so gross or radical as to give rise to a presumption of unfairness. (*Atkinson* v. *Lorbeer,* 111 Cal. 419, [44 Pac. 162].) The burden was, therefore, upon appellant to

prove the unfairness claimed to have resulted. (*Dennen* v. *Jastro, supra; Taylor* v. *Taylor,* 10 Minn. 107 [Gil. 81].) It was stipulated that in the returns there were 6,673 blank ballots in the bond election and 9,316 blank ballots in the power sale election, which had been deposited in the ballot-boxes. In the bond election returns 180 ballots were missing, while 199 ballots were missing in the sale election returns. Appellant introduced as witnesses election officials from seventy-five precincts, who testified concerning the conduct of the voters at the elections. It was thereupon stipulated that appellant was prepared to call officials from 450 additional precincts, whose testimony would be of the same character as that already given. Briefly stated, this testimony was to the effect that, in each precinct, several voters attempted to leave their special election ballots in the booths, throw them on the floor, or carry them away. When they were discovered doing so, the election officials asked for the ballots, whereupon some declared that they thought the ballots in question were sample ballots or instructions how to vote. Plaintiff claims thus to have proved that the blank and missing ballots, which were sufficient in number to have turned the election, were the result of the failure of the electors to understand that they were ballots. There was, however, considerable testimony to the effect that, after being informed that the papers were ballots containing propositions to be voted upon, the electors displayed indifference either by stating that they did not care to bother with the special elections, or by failing to take time to do so. In this connection there is a further fact to be considered. The general municipal ballot, voted at the same time as the special election ballots, contained one proposition in addition to the names of candidates. This proposition concerned the incurring of a bonded indebtedness to raise money to be expended for sewer purposes. No confusion is claimed to have affected the voting on this proposition, yet the vote was as follows: 47,084 in favor, 17,612 against, total 64,696, which is less than the number of ballots voted at either of the special elections.

[9] Furthermore, still considering the question of confusion, there was no direct evidence that the defects in the ballots complained of were the cause of the misunderstanding of some of the electors. As previously stated, three bal-

lots were delivered to each voter, the general municipal ticket, approximately thirteen by fourteen inches, and the two special election ballots, one yellow and the other blue, each about four and one-half by seven inches. Appellant merely proved statements of some electors to the effect that they thought the special election ballots were sample ballots or instructions to voters. This oversight might very likely have been due to the fact that each voter was given three ballots instead of one and to the difference in the size of the ballots, the electors in question carelessly assuming that all voting was to be done on the large ballot. At any rate, it is clearly apparent that carelessness in neglecting to read the ballots handed them was an actively contributing cause of the mistakes of many voters. From the facts proved, the trial court evidently drew the inference that the claimed defects in the form of the ballots were a negligible factor and that the real reasons for the blank and missing ballots in the special election returns were indifference and carelessness, combined with misunderstanding arising from the fact that the three elections were not consolidated, necessitating the use of more than one ballot. Such an inference was supported by the evidence. It is not opposed to human experience and reason and, therefore, it cannot be disturbed by an appellate court. (Code Civ. Proc., secs. 1958, 1960.) It follows that the conclusion of the trial court that plaintiff is entitled to no relief in this action must be upheld.

The judgment is affirmed.

Sloane, J., Olney, J., Shaw, J., Wilbur, J., Angellotti, C. J., and Lawlor, J., concurred.

Rehearing denied.

All the Justices concurred.