Filed 3/23/21  Suprovici v. Vu CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| RAZVAN SUPROVICI,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MICHAEL VU, as Registrar of Voters, etc., et al.<br><br>    Defendants and Respondents. | D077221<br><br><br><br><br>(Super. Ct. No. 37-2019-00025285-CL-MC-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Earl H. Maas III, Judge.  Affirmed.

Razvan Suprovici, in pro. per., for Plaintiff and Appellant.

Thomas E. Montgomery, County Counsel, Christina Snider, Deputy Counsel for Defendants and Respondents.


In a November 2018 election, San Diego Unified School District (District) voters approved Measure YY authorizing the issuance of $3.5 billion in general obligation bonds to improve San Diego Unified schools. About six months later, Razvan Suprovici brought an action challenging the language of the measure's ballot materials and asserting other related

claims. Suprovici named as defendants Michael Vu (the then Registrar of Voters (Registrar)) and Thomas Montgomery (San Diego County Counsel (County Counsel)).

The court sustained defendants' demurrer without leave to amend, finding the claims could not be brought after the election, and, even if a postelection challenge was permitted, Suprovici's lawsuit was filed too late. We affirm, concluding a preelection challenge was Suprovici's exclusive remedy.[1]

## FACTUAL AND PROCEDURAL BACKGROUND
### Background

On July 10, 2018, the District adopted a resolution (Resolution) ordering an election to decide whether it should issue $3.5 billion in general obligation bonds to improve its schools. The District adopted the resolution under Proposition 39, which amended the California Constitution to reduce required voter approval to 55 percent when the indebtedness is to be incurred by school districts for the "construction, reconstruction, rehabilitation, or replacement of school facilities." (Cal. Const., art. XIII A, § 1, subd. (b)(3); *Foothill-De Anza Community College Dist. v. Emerich* (2007) 158 Cal.App.4th 11, 16.) The 55 percent standard applies only if certain accountability factors are satisfied. (*Ibid.*)

---

[1] The appellate briefs in this case are essentially identical to the briefs filed in a separate appeal, *Robertson v. Vu* (D076810), involving a Del Mar Union School District bond measure (Measure MM). Over appellants' objections, defendants moved to consolidate the appeals. We denied the motion because the appellants are different and each challenges a different bond measure and a ruling by a different superior court judge. We have considered each appeal separately, and reach the same conclusions.

The Resolution included the statement that would appear on the ballot immediately preceding the citizen's vote on the measure. This ballot statement said:

> "San Diego Neighborhood School Repair and Student Safety Measure
>
> "To improve Neighborhood and Charter schools by:
>
> "• Improving school security, emergency communications, controlled-entry points, door locks;
>
> "• Upgrading classrooms/labs for vocational/career, science, technology, math education;
>
> "• Repairing foundations, bathrooms/plumbing;
>
> "• Removing lead in drinking water and hazardous asbestos;
>
> "Shall San Diego Unified School District issue $3.5 billion in bonds at legal rates, projecting levy of 6-cents per $100 of assessed valuation for 39 years, estimating $193 million average annual repayments, requiring independent annual audits and citizen oversight?
>
> "Bonds – Yes          Bonds – No"

The Resolution also contained the full text of the measure (193 pages), including the specific project list for each school, and the tax rate statement. The Resolution directed the Registrar to reprint the entire text of the bond proposition in the voter information pamphlet, *or* to include a 10-point boldface-type statement informing voters they can obtain a copy of the entire bond measure by calling the Registrar or the District, or through an identified Internet link.

The next month, on August 16, the Registrar published a public notice containing Measure YY's proposed ballot statement, and stating the election on the bond measure would be held on November 6, 2018. The notice stated

3

that arguments for or against the measure must be submitted by August 17, and that the election materials would then be available for viewing at the Registrar's office. Arguments in favor of and against Measure YY, as well as rebuttals, were timely submitted to the Registrar.

County Counsel drafted an Impartial Analysis of the measure. The Registrar made available for public inspection the text of the measure, the Impartial Analysis, and the arguments in favor of and against the measure. (Elect. Code, § 9509, subd. (a).)[2] As required by section 9509, these materials were available in the Registrar's office for 10 days after the argument-submission deadline.

The Registrar then mailed a voter information pamphlet to voters. On Measure YY, this pamphlet included: (1) the ballot statement; (2) County Counsel's Impartial Analysis; (3) the arguments favoring and opposing the measure (and rebuttals); and (4) a tax rate statement. The pamphlet did not include the full text of the 193-page measure, but the Impartial Analysis contained the following statement: "**If you desire a copy of the measure, please call the San Diego County Registrar of Voters at [phone number] or the San Diego Unified School District at [phone number], and a copy will be mailed at no cost to you. Measure YY is also available on the Internet at [link to Internet site].**"

The election was held on November 6, 2018. Measure YY passed with a 66.4 percent favorable vote. On December 6, 2018, the Registrar declared the results of the election.

---

2      Unspecified statutory references are to the Elections Code.

4

**Lawsuit**

About five months later, on May 17, 2019, Suprovici filed his complaint challenging Measure YY. The complaint contained 10 causes of action.

In his first cause of action, Suprovici alleged the Registrar violated statutory requirements in its publication notice, and asserted various timing challenges pertaining to the dates of the 10-day public examination period. (See §§ 9509, 9500, 9501, 9504.)

In his second cause of action, Suprovici challenged the Impartial Analysis in numerous ways, including that it allegedly did not identify or analyze many aspects of the bond's alleged impermissible purposes or restrictions. He also alleged the Impartial Analysis did not state that the measure failed to meet Proposition 39 requirements and thus the 55 percent voter threshold did not apply.

In his third and fourth causes of action, Suprovici alleged Measure YY did not meet Proposition 39 requirements for various additional reasons.

In his fifth through ninth causes of action, Suprovici challenged Measure YY's ballot statement. First, Suprovici alleged the ballot statement violated statutory requirements for the content of ballots by omitting the phrase, " 'Shall the measure . . . be adopted?' " and including impermissible advocacy and argumentative language. (See § 13119, subds. (a), (c).)[3] Second, he alleged the ballot statement violated Education Code sections 15272 and 15122 by (1) stating the bond spending would have "independent

---

[3]    Under Section 13119, subdivision (a), a school bond measure "shall have printed . . . the words 'Shall the measure (stating the nature thereof) be adopted?' To the right or below the statement of the measure to be voted on, the words 'Yes' and 'No' shall be printed on separate lines, with voting targets." The code section also requires the ballot statement to be true, impartial, and nonargumentative. (§ 13119, subd. (c).)

citizens' oversight" without also stating the school board would "appoint" an oversight committee; (2) failing to disclose that "the board will . . . conduct annual independent audits" and that "funds are spent only on school and classroom improvements and for no other purposes"; and (3) using the words "at legal rates" instead of identifying the maximum interest rate. Third, he alleged the ballot statement violated sections 13247 and 9051, subdivision (b), because it "exceeded the word count limit of 75 words by 2 words, thereby giving the School District a prejudicial and unfair advantage."

In the tenth cause of action, Suprovici alleged the Registrar violated Proposition 39 by failing to include Measure YY's text in the voter information packet, preventing the voters from obtaining the required "access to a list of specific projects their bond money will be used for."

Suprovici attached two exhibits to his complaint: (1) a July 30, 2018 letter written to the Registrar and the San Diego County Board of Supervisors, stating the "school measures you are processing for the upcoming election" do not meet Election Code or Proposition 39 requirements, and detailing the reasons for this assertion; and (2) a postelection letter, dated November 28, 2018, objecting to "nonconforming ballot statements" in numerous approved bond measures, including Measure YY.

Suprovici requested the trial court to set aside the election approving Measure YY, order the Registrar to reject future bond resolutions, and refer the Registrar to the district attorney for criminal prosecution.

**Demurrer**

Defendants demurred to the complaint.[4] They argued the lawsuit was untimely and an impermissible postelection challenge to ballot materials. Defendants asked the court to take judicial notice of various election documents including the relevant portions of the ballot and voter information pamphlet for the November 6, 2018 election; the final election results; the District's August 6, 2018 Resolution; and proof of publication of the ballot statement and ballot-argument deadline.

Suprovici did not file a written opposition, but presented oral argument at the hearing.[5]

After granting defendants' request to take judicial notice of the election documents, the court sustained the demurrer without leave to amend, finding the postelection challenge was "not permitted by the Elections Code," and also was time barred under the applicable statute of limitations (§ 16401).

## DISCUSSION

### I. Review Standard

" 'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.' " (*Robertson v. Saadat* (2020) 48 Cal.App.5th 630, 639 (*Robertson*).) "We are not bound by

---

[4]     Suprovici describes two demurrers in his appellate briefs. However, there was only one demurrer. Defendants filed an amended notice after the hearing was rescheduled to a later date.

[5]     Suprovici moved to augment the appellate record with a copy of a document reflecting a written opposition, dated December 10, 2019. We deny the motion because there was no file stamp on this document and it is dated *after* the court entered judgment and *after* Suprovici filed his notice of appeal.

the trial court's reasoning and may affirm the judgment if correct on any theory." (*Ibid.*)

"We 'adopt[ ] a liberal construction of the pleading and draw[ ] all reasonable inferences in favor of the asserted claims.'" (*Robertson, supra,* 48 Cal.App.5th at p. 639.) We assume the truth of all facts properly pleaded in the complaint and attachments, but we disregard "'"contentions, deductions, [and] conclusions of fact or law."'" (*McBride v. Smith* (2018) 18 Cal.App.5th 1160, 1173.) We also consider judicially noticeable matters. (*Ibid.*)

We apply an abuse of discretion standard in reviewing whether an amendment should have been permitted. To show error, the appellant has the burden to identify specific facts establishing the complaint can be amended to state a viable cause of action. (*Baldwin v. AAA Northern California, Nevada & Utah Ins. Exchange* (2016) 1 Cal.App.5th 545, 559.)

## II. Demurrer was Proper Procedure for Challenging Pleading

Suprovici contends the court had no authority to rule on the demurrer because his claims are governed by the election contest procedures in the Elections Code (§ 16440 et seq.), not the Code of Civil Procedure.

A Court of Appeal recently rejected the identical contention. (*Denny v. Arntz* (2020) 55 Cal.App.5th 914, 924-925 (*Denny*).)[6] The *Denny* court

---

[6] *Denny* involved a postelection challenge to a San Francisco municipal bond measure, in which the Court of Appeal rejected many of the same contentions raised here. (*Denny, supra,* 55 Cal.App.4th 914.) Because *Denny* was published after the parties completed their appellate briefing, we provided the parties the opportunity to submit supplemental letter briefs addressing the *Denny* court's conclusions. We grant Suprovici's request that we also consider the appellant's supplemental brief filed in the *Robertson* appeal (see fn. 1, ante), but deny the additional judicial notice requests contained in the supplemental letters.

reasoned that the "Elections Code expressly incorporates the Code of Civil Procedure into procedures for election contests so long as they are compatible. [¶] There is no . . . incompatibility between a demurer and [the appellant's] [post]election contest [challenging ballot materials]. Section 16602 authorizes a trial court to 'dismiss the proceedings if the statement of the cause of the contest is insufficient,' which is no different from the standards in a demurrer under the Code of Civil Procedure. (§ 16602; Code Civ. Proc., § 430.10 subd. (e.).)." (*Id.* at p. 925.) The *Denny* court also noted that several prior appellate decisions had resolved election contests through demurrers. (*Ibid.; see Salazar v. City of Montebello* (1987) 190 Cal.App.3d 953, 955; *Hale v. Farrell* (1981) 115 Cal.App.3d 164, 168; see also *Warden v. Brown* (1960) 185 Cal.App.2d 626, 626-629.)

We agree with *Denny's* reasoning and conclusion. *Anderson v. County of Santa Barbara* (1976) 56 Cal.App.3d 780, relied upon by Suprovici, is distinguishable. *Anderson* found summary judgment statutory deadlines were "incompatible" with the Elections Code, and thus held the trial court erred in granting the summary judgment in an election contest. (*Id.* at pp. 786-787.) There is no similar inconsistency between a demurrer proceeding and the election contest in this case. (See *Denny, supra,* 55 Cal.App.5th at p. 925.)

### III.  Postelection Challenge is Improper

Defendants demurred to the complaint on the ground Suprovici's claims were precluded because his sole remedy was to assert the challenges before the election. The trial court agreed with this argument. We concur with this conclusion.

9

## A. General Rule

It is well settled a challenge to ballot materials must be brought before an election. (*Friends of Sierra Madre v. City of Sierra Madre* (2001) 25 Cal.4th 165, 192 (*Sierra Madre*); *Denny, supra,* 55 Cal.App.5th at p. 922; *Owens v. County of Los Angeles* (2013) 220 Cal.App.4th 107, 123 (*Owens*); *McKinney v. Superior Court* (2004) 124 Cal.App.4th 951, 957 *(McKinney)*; *People ex rel. Kerr v. County of Orange* (2003) 106 Cal.App.4th 914, 932 (*Kerr*).) " 'The reasons are fundamental. Voters, not judges, mainly run our democracy. It would threaten that core tenet if one person who did not like the election result could hire lawyers and with ease could invalidate an expression of popular will.' " (*Owens,* at p. 124; accord *Sierra Madre,* at p. 192.)

As discussed in Part D, the statutes set forth specific procedures for challenging ballot materials and other similar claims before an election. Suprovici acknowledges he did not avail himself of these procedures, but argues this case falls under statutory and constitutional exceptions to the preelection-challenge rule. He alternatively requests that we permit his lawsuit to go forward because the issues are reoccurring and will not otherwise be subject to review. These arguments are unavailing.

## B. Statutory-Based Exception

Section 16100 contains a list of narrow circumstances under which a postelection challenge may be brought. Suprovici argues this case falls within section 16100, subdivision (c), which states: "Any elector . . . may contest any election held therein, for . . . the following cause[ ] . . . [t]hat the defendant has given to any elector or member of a precinct board any bribe or reward, or has offered any bribe or reward for the purpose of procuring his

10

election, *or has committed any other offense against the elective franchise defined in Division 18 (commencing with Section 18000).*"  (Italics added.)

Suprovici argues his claims come within section 16100, subdivision (c) based on sections 18002 and 18401, which are contained in Division 18 of the Elections Code.

Section 18002 states:  "Every person charged with the performance of any duty under any law of this state relating to elections, who willfully neglects or refuses to perform it, or who, in his or her official capacity, knowingly and fraudulently acts in contravention or violation of any of those laws, is . . . punishable by fine not exceeding one thousand dollars ($1,000) or by imprisonment . . . for 16 months or two or three years, or by both that fine and imprisonment."  Section 18401 states:  "Every person who prints any ballot not in conformity with [the Elections Code], or who circulates or gives to another any ballot, knowing at the time that the ballot does not conform to [the Elections Code], is guilty of a misdemeanor."

Suprovici says his allegations that the ballot materials did not strictly conform to Elections Code requirements support that the Registrar and/or County Counsel can be held criminally liable under sections 18002 and 18401.  This argument is without merit.

It is undisputed that defendants were not notified of alleged deficiencies in the ballot materials after these materials were prepared and before the election; the public was provided the full opportunity to examine the materials in time to bring any preelection challenge; and there was no preelection judicial challenge brought.  Under these circumstances, defendants did not "*knowing*[*ly*]" or "*willfully* neglect[ ] or refuse to perform" a statutory duty within the meaning of these criminal statutes.  (§ 18002, § 18401, italics added.)  Similarly, there are no factual allegations showing

11

defendants "fraudulently" acted in contravention of election laws.  (§ 18002.)
To the extent Suprovici is asking this court to interpret section 16100,
subdivision (c) to permit postelection challenges for any "nonconforming
ballot," this construction is unsupported by the statutory language which
requires an "offense against the elective franchise *defined in Division 18.*"
(§ 16100, subd. (c), italics added.)

Moreover, courts must consider statutory language "in the context of
the entire statute and the statutory scheme of which it is a part."  (*Satele v.
Superior Court* (2019) 7 Cal.5th 852, 858; *Simpson Strong-Tie Co., Inc. v.
Gore* (2010) 49 Cal.4th 12, 27.)  We must "reject a literal construction that is
contrary to the legislative intent . . . or that would lead to absurd results."
(*Simpson,* at p. 27.)

Interpreting section 16100, subdivision (c) as creating an exception to
the preelection exclusive-remedy rule based solely on an allegation that an
election official knew or should have known of a "nonconforming ballot"
would be inconsistent with the statutory scheme and contrary to our duty to
uphold elections " ' "if possible." ' "  (*Gooch v. Hendrix* (1993) 5 Cal.4th 266,
279 (*Gooch*).)  As the *Denny* court stated in response to a similar contention,
"section 16100, subdivision (c) does not provide a statutory basis 'to attack
the outcome of an election based on deficiencies in the impartial analysis' of a
ballot measure after the election. . . .  Enforcing the requirements for an
impartial analysis . . . is a preelection activity."[7] (*Denny, supra,* 55
Cal.App.5th at p. 921.)

---

7    Based on our interpretation of section 16100, subdivision (c), we do not
reach defendants' alternate argument that this subdivision applies only when
*the candidate* is the person who committed the bribe or otherwise committed
an "offense against the elective franchise . . . ."

12

Suprovici's reliance on *Huntington Beach City Council v. Superior Court* (2002) 94 Cal.App.4th 1417 and *McDonough v. Superior Court* (2012) 204 Cal.App.4th 1169 is misplaced. In both cases the challenges to ballot materials and voter guidelines were made before the election, not after. (See *Huntington Beach*, at p. 1426; *McDonough,* at pp. 1173-1174.)

## C. Constitutionally Based Challenge

Suprovici next argues that even if there is no statutory basis for bringing a postelection challenge, he is permitted to do so under a California Supreme Court decision filed 100 years ago and long before the enactment of the statutory exceptions to the preelection challenge rule. (*Rideout v. City of Los Angeles* (1921) 185 Cal. 426, 430 (*Rideout*).) The high court, however, has since reaffirmed that the statutory grounds/exceptions for a postelection contest set forth in section 16100 are generally exclusive (*Sierra Madre, supra,* 25 Cal.4th at pp. 193-194), and under the "modern Election Code provisions which postdate *Rideout,*" a violation of a "mandatory" Election Code rule does not necessarily "invalidate or annul . . . the results of a contested election" (*Gooch, supra,* 5 Cal.4th at p. 278, fn. 7).

We recognize that under *Rideout* and more recent decisions, a postelection challenge may potentially have merit if the alleged improper election procedure violated notions of fundamental fairness and due process, i.e., where the violation prevented the voter from "freely and fairly making their choice at the polls." (*Horwath v. City of East Palo Alto* (1989) 212 Cal.App.3d 766, 775-776, 777-779 (*Horwath*); see *Rideout, supra,* 185 Cal. at p. 432 [postelection challenge proper if "a considerable number of electors or voters" were precluded "from expressing their will at the polls"]; *McKinney, supra,* 124 Cal.App.4th at p. 959 [an election "might be set aside if there was malconduct that rose to constitutional levels"].)

13

However, to prevail on a constitutional challenge, the plaintiff must meet a " 'very high' " bar. (*Kerr, supra,* 106 Cal.App.4th at p. 934; see *Owens, supra,* 220 Cal.App.4th at p. 123 ["no California appellate court, to our knowledge, has invalidated an election on this basis"].) "A litigant cannot simply intone the words 'due process.' " (*Kerr,* at p. 934.) Instead, at the very least, a successful postelection constitutional challenge requires a showing the electorate was "profoundly misled." (*Ibid.*)

Suprovici's allegations do not come close to meeting the fundamental unfairness standard. Suprovici has not alleged any facts showing the voters were prevented from "freely and fairly making their choice at the polls" and/or expressing their will in the election. (*Horwath, supra,* 212 Cal.App.3d at p. 776.) The errors identified by Suprovici (such as the number of words in the ballot statement, and the failure to use the precise statutory language) concern issues that would not have misled the electorate. (See *Rideout, supra,* 185 Cal. at pp. 430-432 [declining to overturn an election based on facts showing certain mandatory words were not contained on the back of the ballot and there were deviations from the prescribed size of certain type]; see also *Gooch, supra,* 5 Cal.4th at p. 278 [" ' "[t]echnical errors or irregularities arising in carrying out directory provisions *which do not affect the result* will not [void] the election" ' "]; *Horwath, supra,* 212 Cal.App.3d at pp. 777-779 [city's failure to comply fully with statutory requirements governing preparation of impartial analysis did not render measure unconstitutional]; *Kerr, supra,* 106 Cal.App.4th at p. 934.) Suprovici acknowledged in his complaint there was no way to know with certainty whether the vote would have been different without the alleged violations.

Suprovici contends the voters could not make an informed and fair choice because the ballot statement and the Impartial Analysis were written

in a biased manner.  Our review of the materials does not support this contention.  But even if there was such language in these materials, this does not reflect the existence of a *constitutional violation* permitting Suprovici to raise the issue for the first time *after the election.*  Before the election, the voters were provided with a specific method for obtaining the full text of the 193-page measure (including the tax rate statement and the specific project list for every school).  The voters were given two alternate telephone numbers to call to obtain a copy of Measure YY and/or an Internet link directing the user to find Measure YY's full text.  Further, the voters would have understood that the ballot statement was merely a summary of the measure and the Impartial Analysis was just that—an analysis—and not the complete statement of the bond measure.

Neither the challenged ballot language nor the absence of the full text in the voter materials would have prevented the voters from voting intelligently on the measure and the voter materials were not "so inaccurate or misleading as to prevent voters from making informed choices." (*Horwath*, *supra*, 212 Cal.App.3d at p. 777; accord *Owens, supra,* 220 Cal.App.4th at p. 126; *Kerr, supra,* 106 Cal.App.4th at pp. 918-919.)  The alleged circumstances do not rise to the level of fundamental unfairness that would exempt a voter from the settled rule that challenges to ballot materials and other preelection issues must be brought before the election.

### D.  Discretionary Review

Suprovici alternatively contends this court should exercise its discretion to address his claims because "they pose issues of continuing public interest that are likely to recur and . . . present questions capable of repetition yet evading review."  Suprovici cites no authority supporting that a court has the discretion to consider a postelection challenge where there is no

15

applicable statutory or constitutional exception.  But even if we did have this authority, we would not exercise it because the issues raised here are not ones that would evade review.

The Elections Code specifically sets forth procedures for preelection challenges to alleged flaws in the voter information pamphlet and/or ballot. (*Denny, supra,* 55 Cal.App.5th at p. 922.)  These procedures provide for a 10-day examination period for members of the public to review the measure, the impartial analysis, and the arguments for and against the measure before they are printed in the ballot materials.  (§ 9509, subd. (a).)  During this 10-day period, "any voter of the jurisdiction in which the election is being held . . . may seek a writ of mandate or an injunction requiring any or all of the materials to be amended or deleted."  (§ 9509, subd. (b)(1).)  Section 13314, subdivision (a)(1) also provides for a preelection judicial challenge to ballot materials:  "An elector may seek a writ of mandate alleging that an error or omission has occurred, or is about to occur, in the placing of a name on, or in the printing of, a ballot, county voter informant guide, state voter information guide, or other official matter, or that any neglect of duty has occurred, or is about to occur."

Suprovici had the opportunity to invoke these preelection procedures, but he did not do so.  He attached a letter to his complaint sent to election officials before the Resolution was adopted, detailing statutory requirements for bond measures and admonishing the officials to "FOLLOW THE LAW," pertaining to school bond measures.  He does not identify any reason that he could not have brought a writ of mandate petition under statutory procedures

16

before the election.[8]  On this record, there is no ground to find the issues would "evade review" or to decline to apply the statutes requiring a preelection challenge for claims such as the ones before us.

In his reply brief, Suprovici suggests we should reach the merits of his contentions because election officials in this state, and defendants in particular, have a pattern of preparing biased and misleading impartial analyses and ballot statements.  Even assuming this is true, Suprovici does not explain why he could not assert his claims before the election in which the ballot materials were alleged to be improper.

Suprovici also discusses various Proposition 39-based bond measures on 2020 ballots in other counties.  Because these assertions concern facts occurring after the judgment and involve different counties, this discussion is not properly before us.  We decline Suprovici's request in his appellate brief that we take judicial notice of ballot materials for various Proposition 39-based school bond measures in different counties for the March 3, 2020 election.  Suprovici did not follow required procedures for requesting judicial notice because he did not file a separate motion or attach copies of the requested materials.  (See Cal. Rule of Court, rule 8.252.)  Additionally, those 2020 ballot materials for other counties are irrelevant to the issues before us and do not show the court in this case erred in sustaining the demurrer.

---

[8]  At one point in his brief, Suprovici suggests the Registrar's August 16 publication of the argument deadlines violated statutory standards.  However, he does not cite to any legal authority supporting this argument, nor does he assert any ground showing he could not have raised this issue in a preelection challenge.  We likewise find unhelpful Suprovici's comparison of the Registrar's 2018 deadlines for submitting ballot arguments with the deadlines for 2020 measures.

## IV. Remaining Arguments

Suprovici devotes most of his appellate briefs to raising substantive challenges to the ballot statement and Impartial Analysis and related issues. Because we conclude his exclusive remedy was to assert these arguments before the election, we do not reach these arguments. We likewise do not address defendants' alternative arguments in support of their demurrer, such as the statute of limitations.

Three of Suprovici's causes of action do not relate directly to the language of the ballot materials: (1) the first cause of action alleging errors with respect to the timing of the 10-day inspection period, and (2) the third and fourth causes of action pertaining to claimed inconsistencies between Measure YY and Proposition 39.

As to the first cause of action, Suprovici does not identify any ground showing he could not have raised these timing issues before the election. Thus, these claims are similarly barred by the exclusive preelection challenge rule. Additionally, Suprovici does not separately discuss these issues or provide legal authority supporting these claims, and thus the contentions are forfeited. (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*).)

As to the third and fourth causes of action, Suprovici does not separately explain the legal basis supporting these allegations, nor does he identify any grounds upon which these defendants would have any liability or authority over substantive claims challenging the bond measure. Thus, any such contentions are forfeited and without merit. (See *Cahill, supra,* 194 Cal.App.4th at p. 956.)

Suprovici does not contend the court erred by refusing to permit leave to amend, and has not met his burden to show a basis for error in this regard. Thus, any such claim is also forfeited and without merit.

## DISPOSITION

Judgment affirmed.  Appellant to bear respondents' costs on appeal.


HALLER, J.

WE CONCUR:


HUFFMAN, Acting P. J.


O'ROURKE, J.