[No. G038705. Fourth Dist., Div. Three. Jan. 17, 2008.]

TRUNG NGUYEN, Plaintiff, Cross-defendant and Appellant;
CAN NGUYEN, Plaintiff and Appellant, v.
JANET NGUYEN, Defendant, Cross-complainant and Respondent;
ORANGE COUNTY REGISTRAR OF VOTERS, Cross-defendant and
Respondent.

COUNSEL

Michael J. Schroeder and Steven D. Baric for Plaintiff and Appellant and for Plaintiff, Cross-defendant and Appellant.

Law Offices of Phillip B. Greer and Philip B. Greer for Defendant, Cross-complainant and Respondent.

Benjamin P. de Mayo, County Counsel, Leon J. Page and Mark D. Servino, Deputy County Counsel, for Cross-defendant and Respondent.

OPINION

**SILLS, P. J.—**

## I. INTRODUCTION

Trung Nguyen seeks, in this appeal from a judgment after an election contest, to be declared the winner of an election for an Orange County supervisorial seat. The winner of the election, as certified by the Orange County Registrar of Voters (Registrar of Voters or Registrar) after a recount, was Janet Nguyen. That is, after the recount, Janet Nguyen had the highest number of *legal votes* among all those running for the office. Trung Nguyen's theory is that Janet Nguyen requested a statutorily incorrect methodology for the recount, and therefore the recount *itself* was invalid, and he is thus entitled to take office as the certified winner of the election based on the results prior to the recount.

In specific terms, Trung Nguyen asserts this: Janet Nguyen's request that paper absentee ballots be recounted by hand but ballots cast by "direct recording electronic" (DRE) machines be recounted electronically ipso facto invalidated the recount. He contends that sections 15627 and 19253 of the Elections Code[1] do not permit a recount in which paper absentee ballots or valid paper provisional ballots are recounted one way (manually), but electronic ballots are recounted another (electronically).

 As we explain in detail below, this argument is not persuasive. There can be no doubt that, in a recount, *paper ballots* may be recounted manually while electronic ballots may be recounted electronically. (A recount requester

---

[1] Both statutes will be quoted in full, in the text, in part IV.A of this opinion. All further statutory references in this opinion will be to the Elections Code.

does, of course, have the *right* to have electronic votes recounted manually, and if they are, the manual count governs over any electronic count.)

Moreover, even if Trung Nguyen's statutory analysis is correct, two undisputed facts require us to affirm the judgment in Janet Nguyen's favor:

(1) Trung Nguyen presented absolutely no evidence to the trial court that a manual recount of the electronic ballots in this case would have *made any difference*. (A manual recount would have been performed by examining an internal printout of each voter's choices recorded by the machine and then kept within the machine.) There are in this case, conspicuously, no allegations, much less evidence, that the electronic voting machines *in this particular election* were tampered with, manipulated, or in any way electronically recorded anything other than a totally accurate vote count. (To be sure, Trung Nguyen did present evidence that the particular kind of machine used in the election *could* be tampered with. But he did not present any evidence that any machines in this Orange County, California election *were* tampered with, or were in any way inaccurate.)

(2) Trung Nguyen deliberately decided to waive the right that he had to ask the trial court in his election contest to order the electronic ballots to be recounted manually. There is no question that if such a recount was "necessary for a proper determination" of his election contest, the trial court would have been obligated to order such a recount. (See § 16601; *Enterprise Residents etc. Committee v. Brennan* (1978) 22 Cal.3d 767, 773, fn. 6 [151 Cal.Rptr. 1, 587 P.2d 658].) Rather, in open court, Trung Nguyen disavowed *his* right to have a manual recount of the electronic ballots. Rather, he chose to stake his entire case on the idea that he is *entitled*, as a matter of law, to be placed in office *by the courts as a result of an election contest* based on what he claims is a statutorily invalid recount.

As we show below, our Supreme Court has made it clear in numerous cases that election results are not to be invalidated based on the technical noncompliance with election statutes where there is no showing that the noncompliance would have made any actual difference to the election. Under that line of jurisprudence, we cannot reverse the judgment even if Trung Nguyen's statutory arguments regarding the kinds of recount permitted by sections 15627 and 19253 were well taken.

Finally, there is no way that this court, on this particular record, could legally declare Trung Nguyen the winner in this case. Simply put, there is no substantial evidence that *he* received the *highest number of legal votes* in the

election. A court cannot declare a candidate the winner who has not received the highest number of legal votes. (*Bradley v. Perrodin* (2003) 106 Cal.App.4th 1153, 1170 [131 Cal.Rptr.2d 402].) The most that Trung Nguyen might achieve in this appeal is a judgment annulling the February 2006 election and holding a new one, but that is relief he manifestly does not seek.

## II. A GLOSSARY

Election cases often have their own nomenclature, which is not always obvious or intuitive to lay readers. Here is a quick glossary of terms and abbreviations that are relevant to this case:

DRE: Stands for "direct recording electronic," that is, it represents an electronic voting machine. In the present case, the DRE machines worked this way: A voter arrives at his or her polling place and is given a code. When the voter enters the booth, he or she enters the code into the machine. The voter then uses a small wheel to scroll through the names of the various candidates and offices; when the voter wishes to cast a vote for a candidate, he or she presses a button corresponding to the candidate indicated on the scroll. After completing all voting, the voting machine prints a paper fac-simile of the votes cast by the voter, which allows that voter to confirm that the machine is indeed correctly recording the votes cast by the voter. The paper facsimile is displayed through a pane of glass, but is not given to the voter. Rather, the printout is kept by the machine internally.

VVPAT: Stands for "voter verified paper audit trail," which is the paper facsimile printed out by the DRE machine which the voter sees through the pane of glass but does not keep. As mentioned above, the printout is stored inside the DRE machine. We should note here that the VVPAT printouts are relatively fragile pieces of paper (as anyone who ever experienced a paper jam in an office printer knows), that would not qualify as proper paper ballots in an election where a voter was casting his or her votes by means of a paper ballot.

MBB: Stands for "mobile ballot box," but it is really a computer memory storage device inside a DRE machine that electronically records the various turn-of-the-wheel-and-press-the-button votes made by a voter on a DRE machine. When the votes are counted, the data on the MBB is downloaded in order to ascertain the vote count from the machine.

"Official canvass" is the actual, "public process of processing and tallying all ballots received in an election" (§ 335.5), that is, the official counting of the votes.

"1 percent manual tally" is a procedure used in California to test whether there are any discrepancies between the electronic record generated by a voting machine and what is essentially a manual *audit* of that electronic record. Essentially, after each election, the "official conducting the election" is to conduct a "public manual tally of the ballots tabulated" by any voting machines "cast in 1 percent of the precincts chosen at random by the elections official." (§ 15360, subd. (a).) In the case of electronic voting machines with internal printouts (or VVPAT's), there is no question that the VVPAT's trump any difference between them and the "electronic record" of the vote. (§ 19253, subd. (b)(2).)

"Illegal vote" is a vote that has "not been cast in the manner provided by law." (*Gooch v. Hendrix* (1993) 5 Cal.4th 266, 279 [19 Cal.Rptr.2d 712, 851 P.2d 1321] (*Gooch*); see also *Bush v. Head* (1908) 154 Cal. 277, 281–282 [97 P. 512] (*Bush I*)[2] ["The term 'illegal votes,' as used in this section, clearly includes votes cast by persons not privileged to vote and votes not entitled to be counted because not cast in the manner provided by law."].) Conversely, a "legal vote" is one which has been cast in a manner provided by law. For example, absentee ballots not delivered to the official from whom they came in violation of section 1013 are "clearly illegal and cannot be counted." (*Gooch, supra,* 5 Cal.4th at p. 280.) We should add that the phrase "illegal vote" perhaps connotes more sting than its actual meaning: Justice Kennard pointed out in her dissenting opinion in *Gooch* that an " 'illegal' vote is simply a ballot cast in *violation of the procedures* established by the Elections Code," and does not necessarily mean that "the voter, or the persons assisting the voter," intended to "subvert the elections process." (*Gooch, supra,* 5 Cal.4th at p. 287–288, italics added (dis. opn. of Kennard, J.).) "Thus a well-meaning voter may cast an illegal vote through ignorance or inadvertence rather than a conscious attempt to circumvent elections laws or to give any candidate an unfair advantage." (*Id.* at p. 288.)

"Undervote" is where no choice is recorded for a given office or measure on the ballot. (E.g., *S.W Voter Registration Educ. v. Shelley* (9th Cir. 2003) 344 F.3d 914, 917 (*Southwest Voter*) [defining "undervotes" as "ballots read by the machine as not containing a vote"]; *Bush v. Gore* (2000) 531 U.S. 98, 135 [148 L.Ed.2d 388, 121 S.Ct. 525] (dis. opn. of Souter, J.) [defining "undervotes" in presidential election as "those for which no Presidential choice was recorded by a machine"].)

"Overvote" is where a voter marks more than one choice where more than one choice is not allowed by law. (E.g., *Southwest Voter, supra,* 344 F.3d at

---

[2] Another election case involving a candidate named George W. Bush.

p. 917 [defining "overvotes" as "ballots disqualified because they are read by the machine as containing more than one vote on a single candidate contest or initiative issue"]; *Bush v. Gore, supra*, 531 U.S. at p. 135 (dis. opn. of Souter, J.) [defining "overvotes" as "rejected because of votes for more than one candidate"].) Unlike undervotes, which are not in themselves illegal, overvotes are by definition illegal, because it is impossible to tell the actual choice, if any, the voter was making. Determination of overvotes are sometimes problematic with paper ballots.[3] For example, if a voter began to make a mark for one candidate and then realized that the mark voted for the wrong candidate and then made a mark for another candidate, a trial court could face a factual problem in which there was no legal bright line.

"Provisional ballots" are ballots issued to individuals claiming to be properly registered, but whose "qualification or entitlement to vote cannot be immediately established" at the voting place. (§ 14310, subd. (a).)[4] Provisional ballots are segregated from the others (§ 14310, subd. (b)[5]) and only counted *if* the appropriate elections official ascertains that the voter really is qualified or entitled to vote. (§ 14310, subd. (c).)[6] In the case before us, some provisional ballots were cast electronically, and others were cast on paper ballots.

---

[3] See 28 Cal.Jur.3d (2004 ed.) Elections, section 176, page 761: "If a voter indicates, either by a combination of both marking and writing in, a choice of more names than there are candidates to be elected or nominated for any office . . . the vote for that office may not be counted . . . ."

[4] Section 14310, subdivision (a) provides:

"(a) At all elections, a voter claiming to be properly registered but whose qualification or entitlement to vote cannot be immediately established upon examination of the index of registration for the precinct or upon examination of the records on file with the county elections official, shall be entitled to vote a provisional ballot as follows:

"(1) An elections official shall advise the voter of the voter's right to cast a provisional ballot.

"(2) The voter shall be provided a provisional ballot, written instructions regarding the process and procedures for casting the provisional ballot, and a written affirmation regarding the voter's registration and eligibility to vote. The written instructions shall include the information set forth in subdivisions (c) and (d).

"(3) The voter shall be required to execute, in the presence of an elections official, the written affirmation stating that the voter is eligible to vote and registered in the county where the voter desires to vote."

[5] Section 14310, subdivision (b) provides: "(b) Once voted, the voter's ballot shall be sealed in a provisional ballot envelope, and the ballot in its envelope shall be deposited in the ballot box. All provisional ballots voted shall remain sealed in their envelopes for return to the elections official in accordance with the elections official's instructions. The provisional ballot envelopes specified in this subdivision shall be a color different than the color of, but printed substantially similar to, the envelopes used for vote by mail ballots, and shall be completed in the same manner as vote by mail envelopes."

[6] Section 14310, subdivision (c) provides:

"(c)(1) During the official canvass, the elections official shall examine the records with respect to all provisional ballots cast. Using the procedures that apply to the comparison of

"Certification" of an election is done by the relevant elections official, who certifies the statement of results as complete and accurate. (See § 15372;[7] see also § 15620.[8]) On occasion, at least in other states, certifications by the relevant elections official have been delayed by the state courts to allow time for manual recounts. (E.g., *Palm Beach County Canvassing Bd. v. Harris* (Fla.

---

signatures on vote by mail ballots, the elections official shall compare the signature on each provisional ballot envelope with the signature on the voter's affidavit of registration. If the signatures do not compare, the ballot shall be rejected. A variation of the signature caused by the substitution of initials for the first or middle name, or both, shall not invalidate the ballot.

"(2) Provisional ballots shall not be included in any semiofficial or official canvass, except upon: (A) the elections official's establishing prior to the completion of the official canvass, from the records in his or her office, the claimant's right to vote; or (B) the order of a superior court in the county of the voter's residence. A voter may seek the court order specified in this paragraph regarding his or her own ballot at any time prior to completion of the official canvass. Any judicial action or appeal shall have priority over all other civil matters. No fee shall be charged to the claimant by the clerk of the court for services rendered in an action under this section.

"(3) The provisional ballot of a voter who is otherwise entitled to vote shall not be rejected because the voter did not cast his or her ballot in the precinct to which he or she was assigned by the elections official.

"(A) If the ballot cast by the voter contains the same candidates and measures on which the voter would have been entitled to vote in his or her assigned precinct, the elections official shall count the votes for the entire ballot.

"(B) If the ballot cast by the voter contains candidates or measures on which the voter would not have been entitled to vote in his or her assigned precinct, the elections official shall count only the votes for the candidates and measures on which the voter was entitled to vote in his or her assigned precinct."

[7] Section 15372 provides: "The elections official shall prepare a certified statement of the results of the election and submit it to the governing body within 28 days of the election or, in the case of school district, community college district, county board of education, or special district elections conducted on the first Tuesday after the first Monday in November of odd-numbered years, no later than the last Monday before the last Friday of that month."

[8] Section 15620 provides:

"Following completion of the official canvass, any voter may, within five days thereafter, file with the elections official responsible for conducting an election in the county wherein the recount is sought a written request for a recount of the votes cast for candidates for any office, for slates of presidential electors, or for or against any measure, provided the office, slate, or measure is not voted on statewide. The request shall specify on behalf of which candidate, slate of electors, or position on a measure (affirmative or negative) it is filed.

"If an election is conducted in more than one county, the request for the recount may be filed with the elections official of, and the recount conducted within, any or all of the affected counties.

"For the purposes of this section 'completion of the canvass' shall be presumed to be that time when the elections official signs the certified statement of the results of the election except that, in the case of a city election, if a city council canvasses the returns itself and does not order the elections official to conduct the canvass as permitted by Section 10263, 'completion of the canvass' shall be presumed to be that time when the governing body declares the persons elected or the measures approved or defeated."

2000) 772 So.2d 1220, 1240 [delaying otherwise applicable statutory deadline for certification of results in order to allow for manual recount in certain counties.[9]].)

"Election contest" is the *court challenge* by which a candidate or voter may legally challenge the certification of election results; hence election contests are brought in the wake of certification. (E.g., *Pierce v. Harrold* (1982) 138 Cal.App.3d 415, 426 [188 Cal.Rptr. 458] ["it is readily apparent that the Legislature contemplated that such contests would be filed soon after the election results become known . . ."].)

## III. FACTS

### A. Count and Recount

A special election was held February 6, 2007, to fill the unexpired term of the vacant Orange County supervisorial seat for the first supervisorial district. The election was not a prelude to a runoff between the two top votegetters: The winner would be the candidate with the most votes in the field, even if only a plurality. Ten candidates were running.

Voters who arrived at local polling stations mainly used a turn-the-wheel-and-press-the button DRE voting machine. However, over 35,000 absentee paper ballots were returned as well. There were also about 771 provisional ballots cast during the election. The Registrar determined that 71 of those provisional ballots were not cast by individuals eligible to vote in the election. Those 71 ballots were not counted pursuant to section 14310, subdivision (c) (provisional ballots counted only if elections official verifies that voter was eligible). The rest were counted.

The initial vote count methodology was to use an optical scanner to count the absentee paper ballots votes (unless the optical scanner could not "read" the ballot, in which case it was separately reviewed and tabulated manually), while the DRE votes were counted electronically, by downloading and tabulating the MBB memory devices from the various DRE machines.

The election was exceedingly close as between the top two votegetters. On Friday, February 9, the Orange County Registrar of Voters certified the

---

[9] Having a manual recount limited to only certain counties in a statewide election and without standards to assure uniformity in what was a "legal vote," however, was subsequently held to present equal protection problems as a matter of federal constitutional law. (See *Bush v. Gore, supra*, 531 U.S. 98.)

official canvass of the votes of the election, with a difference of only seven votes. Trung Nguyen had 10,920; Janet Nguyen had 10,913. The remaining eight candidates had significantly fewer votes.

On Monday, February 12, the Registrar of Voters received a letter from Janet Nguyen's attorney requesting a recount of all ballots cast. The next day, February 13, an attorney for a voter in the district, Gerald Feather, also requested a recount. The Registrar spoke with both Janet Nguyen's and Feather's attorneys about how to proceed with the recount. Both requested that all *paper ballots* (including any provisional ballots cast on paper) in all precincts be manually recounted, as distinct from being optically scanned. Thus in the subsequent recount, *all* paper ballots were physically inspected by the Registrar's canvassing boards, and representatives for each candidate, including Trung Nguyen, had the opportunity to challenge each ballot. The recount of the paper ballots resulted in a number of challenges to a number of the ballots (about 200) brought by both sides, mostly on the theory that identifying marks made a number of ballots illegal (and in some cases that some ballots were, or were not, true "overvotes" where the choice could not be truly ascertained). (See §§ 14287 ["No voter shall place any mark upon a ballot that will make that ballot identifiable."], 15154, subd. (a) ["Any ballot that is not marked as provided by law or that is marked or signed by the voter so that it can be identified by others shall be rejected."]; cf. Cal. Const., art. 2, § 7 ["Voting shall be secret."].)

The Registrar made a determination of which challenges were meritorious, then asked the attorneys for Janet Nguyen and Gerald Feather whether they wanted to have the DRE votes tabulated electronically by downloading the MBB memories or by manually counting the paper printouts inside each machine (the VVPAT's). The extra cost was $5,000 and would require an extra four days. The attorneys for both Feather and Janet Nguyen opted for the less expensive and less time-consuming download method. After making sure that every precinct had been counted, the Registrar certified new vote totals to the effect that Janet Nguyen had received 10,919 and Trung Nguyen received 10,912. The Registrar certified those results on February 26, 2007, making Janet Nguyen the winner.

The 71 provisional ballots originally not counted because the Registrar determined them to have been cast by ineligible voters were not counted in the recount either. There is no argument in this appeal that the Registrar erred by *incorrectly ascertaining* that those ballots were indeed cast by *ineligible* voters.

## B. The Election Contest

The next day after the certification, February 27, 2007, Can Nguyen[10] filed a statement of election contest and then an amended statement of election contest, naming only Janet Nguyen as a defendant. Can Nguyen did *not* name the Orange County Registrar of Voters.[11] Can Nguyen sought a judgment (1) annulling the certificate of election issued to Janet Nguyen, (2) declaring Trung Nguyen to be the elected supervisor for the district, and (3) ordering a certificate of election be issued to Trung Nguyen "forthwith."

The statement of election contest filed was two-pronged: One prong was based on the allegation that 21 *legal votes* for Trung Nguyen which had survived the process of challenges to the paper ballots during the recount had been improperly deducted from his total, while another 18 *illegal votes* had been improperly counted for Janet Nguyen. Given Janet Nguyen's seven-vote margin of victory in the recount, the alleged errors in ascertaining legal votes were easily enough to entitle Trung Nguyen to be declared the winner *if* he prevailed on these attacks to various ballot challenges.

The second prong of the election contest was the allegation that there had been a "failure to perform full recount," hence the recount was "null and void," because the internal paper printouts (or VVPAT's) had not been counted manually.

---

[10] The record is remarkably silent as to Can Nguyen's identity. Other than presumably being a voter in the district and a supporter of Trung Nguyen, we don't know much about him. The statement of election contest and amended statement of election contest filed on his behalf contain no allegations as to his interest in the election, nor did he appear as a witness at the trial.

[11] An issue which we do not address in this appeal is the degree to which the Orange County Registrar of Voters was an indispensable party. (Cf. *Nguyen v. Superior Court* (2007) 150 Cal.App.4th 1006, 1013 [58 Cal.Rptr.3d 802] [while court did not rely in rejecting Trung Nguyen's writ petition on Janet Nguyen's argument that Registrar of Voters was an indispensable party, court observed that "it is hard to see how this court could void the certification of the winner of an election contest by the registrar of voters without at least hearing the registrar's side of the story"].)

In this case we will further observe that Can Nguyen's real target *was* the Orange County Registrar of Voters, because it was the registrar who *honored* Janet Nguyen's and Gerald Feather's requests that the recount be conducted in a certain way (manual recount of the paper ballots, electronic recount of the electronic ballots). If the registrar had told Janet Nguyen and Gerald Feather that their only choice for a recount was to have the electronic ballots recounted by manually counting the VVPAT printouts, this case would never have happened. However, since in any event Janet Nguyen brought the Orange County Registrar of Voters into the case by her cross-complaint, we need not explore the issue further.

One week later, on March 5, 2007, Janet Nguyen filed a counterstatement of election contest, and naming both Trung Nguyen and the Orange County Registrar of Voters as cross-defendants. Janet Nguyen's statement alleged that the failure to include the Orange County Registrar of Voters as a party was "fatal" to Can Nguyen's challenge. This counterstatement also alleged that, in fact, Trung Nguyen challenged twice as many ballots as Janet Nguyen, and prevailed 3-to-1 over her among the successfully challenged ballots. In substance, though, Janet Nguyen did not seek any affirmative relief (by, for example, having illegal votes for her adjudicated to have been legal votes). She simply sought a judgment reaffirming her election, and directing the board of supervisors to immediately swear her in.

Trial began on March 21, and lasted five days. At times the trial court proceeded ballot by ballot. While Trung Nguyen did present evidence that the particular brand of voting machine used in the election was *susceptible* to inaccurate tallies, he presented no evidence that there had been any tampering or inaccuracy in the counting of electronic votes in this particular election.

During the trial Trung Nguyen made it clear that he was not asking for a manual recount of the VVPAT's. His attorneys, in fact, *objected* to the Registrar even being asked the question of whether the VVPAT's might still be recounted, and told the court they were *not* making any such request.[12]

The court announced its decision on Monday, March 26. The court ruled that two ballots which the Registrar had originally deemed overvotes should have been counted for Trung Nguyen, and two ballots, which the Registrar originally deemed to be votes for Janet Nguyen, were really overvotes, and should not be counted for her. The court recognized, though, that the four-vote change in Trung Nguyen's favor was insufficient to change the outcome of the election. The trial court called the evidence of the theoretical susceptibility of the machines to tampering speculative.

---

[12] At the trial, counsel for the registrar asked the registrar whether, if the court ordered it, there would be any reason the registrar's office could not break the seals containing the "VVPAT printouts and now conduct a VVPAT recount." An attorney for both Can Nguyen and Trung Nguyen immediately objected based on relevance. When the registrar's attorney responded by saying the possibility went "to the remedies that the contestant has sought," the court replied that it was "not certain" it could "order the VVPAT counted at this point." Another attorney for both Can Nguyen and Trung Nguyen then made it clear that Trung Nguyen was not asking for a recount; his exact words were, "And in fact, if you look in our prayer, your honor, he is absolutely wrong about those remedies. We haven't asked for that as a remedy. We don't believe legally that it is available to the court." The judge replied that he didn't "think you have asked for that remedy" and the same attorney for Can Nguyen and Trung Nguyen replied, "that is correct, *we have not.*" (Italics added.)

Trung Nguyen did not challenge the decision by petition for writ of mandate at that point. Trung Nguyen did not bring a petition for writ, or even ask for an emergency stay of the trial court's judgment pending the bringing of a petition for writ.[13] As a result, the next day, Tuesday March 27, Janet Nguyen was sworn into office. Trung Nguyen did not file a petition for writ challenging the trial court's judgment until April 10, by which time Janet Nguyen had already assumed her office on the board of supervisors. In May, this court later denied Trung Nguyen's petition for a writ of mandate, explaining that, since Janet Nguyen had *by then* been sworn into office, and the challenge at that point could mean judicially removing a sitting official and replacing her with another person, section 16900 favored proceeding by the more deliberate process of appeal rather than the comparatively hurried process of writ petition.[14] (See *Nguyen v. Super. Ct., supra,* 150 Cal.App.4th at p. 1013 [". . . section 16900 certainly favors proceeding by appellate review as the norm. This case does not warrant departing from that norm."].)

In this appeal, Trung Nguyen does not challenge the trial court's ballot-by-ballot rulings as to what paper ballots represented illegal votes, and which did not. All his arguments in this appeal are variations on the theme that the recount was conducted contrary to sections 15627 and 19253 and therefore the recount itself was invalid.

## IV. DISCUSSION

### A. The Most Natural Reading of Sections 15267 and 19253 Is that They Allow for the Option of an Electronic Recount of Electronic Votes and a Manual Recount of Paper Ballots

As this court intuited in *Nguyen v. Superior Court, supra,* 150 Cal.App.4th at page 1010, Trung Nguyen's statutory argument is "highly technical." It involves the interaction between section 15627, which is in the part of the Elections Code governing recount procedures, and section 19253, which is

---

[13] Judges of this court were, in fact, expecting such a request for stay and were prepared to evaluate it and rule immediately if one had been filed.

[14] Section 16900 provides: "Any party aggrieved by the judgment of the court may appeal therefrom to the court of appeal, as in other cases of appeal thereto from the superior court. During the pendency of proceedings on appeal, and until final determination thereof, the person declared elected by the superior court shall be entitled to the office in like manner as if no appeal had been taken."

the part involving approval of voting systems. We now quote both section 15627[15] and section 19253[16] in full in the margin.

▊ Section 15627 clearly gives a recount requester a choice between a manual recount *or* the ."voting system used originally." There can be no question, then, that the statute envisions the legitimate possibility. that a voter might ask for a recount using *only* the "voting system used originally." For example, Janet Nguyen surely had the option of requesting a recount consisting solely of rerunning paper ballots through optical scanners and a second download of the data inside the MBB.

And, indeed, Trung Nguyen's briefing recognizes this possibility as legitimate. His argument is simply that the statute does not allow for the possibility that one *portion* of the vote—essentially the paper ballots—might be recounted manually while *the remaining portion*—the votes cast on electronic machines—might be recounted by the "voting system used originally." He asserts that the recount requester must choose one, or the other, or both of them *completely*.

▊ By the same token, section 19253, subdivision (a) clearly allows for the possibility, when there is no recount (which is most elections), that the "official record of the vote" will be the "electronic record of each vote." That is, under section 19253, most elections will be legitimately decided by looking only at the "electronic record" of ballots cast electronically, without ever counting VVPAT's. The data from the download of the MBB memory sticks in such cases *is* the official record.

And, again, Trung Nguyen recognizes this legitimate possibility for an initial canvass. His point is that subdivision (b) of section 19253, with its language that the VVPAT's "shall be used for . . . any full recount" means

---

[15] Section 15627 provides:

"(a) If in the election which is to be recounted the votes were recorded by means of a punchcard voting system or by electronic or electromechanical vote tabulating devices, the voter who files the declaration requesting the recount may select whether the recount shall be conducted manually, or by means of the voting system used originally, or both.

"(b) For purposes of direct recording electronic voting systems, 'conducted manually' means that either the paper record copies or the voter verified paper audit trail of the electronically recorded vote are counted manually, as selected by the voter who requests the recount."

[16] Section 19253 provides:

"(a) On a direct recording electronic voting system, the electronic record of each vote shall be considered the official record of the vote, except as provided in subdivision (b).

"(b)(1) The voter verified paper audit trail shall be considered the official paper audit record and shall be used for the required 1-percent manual tally described in Section 15360 and any full recount.

"(2) The voter verified paper audit trail shall govern if there is any difference between it and the electronic record during a 1-percent manual tally or full recount."

that there can be no legitimate recount at all—as distinct from the initial canvass—unless the internal printouts (or VVPAT's) are *always* taken out of the DRE machines and literally counted by hand.

The trial court, in comparing sections 15627 and 19253, thought there was a conflict between the two statutes, with section 15627 affording such a "mix and match" option while section 19253, if read "literally," always requiring a manual recounting of the VVPAT's internally printed inside the DRE machines. To *reconcile* the two statutes, the trial court ruled that section 19253 *only* applies *if* a recount requester exercises the option to ask for a manual recount of the VVPAT printouts.

In this appeal, Trung Nguyen again contends that section 15627 does not afford any such "mix and match" option at all (hence there is no need to reconcile conflicting statutes), because the critical words at the end of subdivision (a) of section 15627, "or both," simply do not allow for a combination of "manual" recounting and "the voting system used originally." Trung Nguyen argues that if the Legislature meant to allow for the possibility of a *combination* of manual and electronic recounts, it would have said something on the order of, "or both, or a combination of the two." Otherwise, he asserts, the use of the words, "or both" in section 15627 mean that a challenger must ask for either (1) a 100 percent manual recount, or (2) a 100 percent "voting system used originally" recount, or (3) both a 100 percent manual recount and a 100 percent "voting system used originally" recount.

### 1. Section 15627

We examine Trung Nguyen's argument concerning section 15627 first, and conclude it fails for two reasons. First, the words, "or both" are not, depending on the context, necessarily *exclusive* of the idea of a *combination* of two things. In the context of recounts, it makes logical sense that the Legislature would give recount requesters the option of having paper ballots counted manually, as distinct from being run through an optical scanner again. If there are going to be vote challenges for incompleteness, ambiguity (e.g., overvotes) or other defects (e.g., identifying marks) (see § 15631[17]), they are more likely to be found among the paper ballots.

---

[17] Section 15631 provides:

"On recount, ballots may be challenged for incompleteness, ambiguity, or other defects, in accordance with the following procedure:

"(a) The person challenging the ballot shall state the reason for the challenge.

"(b) The official counting the ballot shall count it as he or she believes proper and then set it aside with a notation as to how it was counted.

"(c) The elections official shall, before the recount is completed, determine whether the challenge is to be allowed. The decision of the elections official is final."

At the same time, assuming the inclusion of VVPAT's inside electronic voting machines have done the job of keeping the machines honest and no one believes that anyone is out to, literally, rig the election by tampering with the DRE machines, nothing is likely to be gained by a manual recount of the VVPAT's. Indeed, Trung Nguyen's own actions in not requesting such a manual recount of the VVPAT printouts himself speak louder than his briefs.

Second, Trung Nguyen's interpretation of section 15627 creates the anomaly that a recount requester could trigger two successive and substantively independent recounts. Either that, or Trung Nguyen's interpretation contemplates absurdity.

In this appeal, we do not need to explore the degree to which statutes in the Elections Code provide for more than one recount if, for example, there were different recount requesters with different agendas, each making timely recount requests. Here, both Janet Nguyen and Gerald Feather agreed on what they would jointly request as to one recount, and in this record both may be treated as essentially one requester.

But it is safe to say that, for purposes of our analysis here, the Elections Code does not allow a *single recount requester more than one recount.* (Or at least no more than one recount, not including a *court-ordered* recount pursuant to section 16601 as the result of an election contest.) Section 15627 uses the phrase *"the* recount" (italics added) twice.

Under Trung Nguyen's reading of "or both," a recount requester could ask and *pay for* "both" (1) a "cheap" option of simply rerunning paper ballots through optical scanners plus a second download of the MBB sticks and (2) an "expensive" option of manually counting the same paper ballots that had been already rerun through the scanner and also manually counting the DRE machine's VVPAT's.

It would be absurd, though, to suppose that a recount requester would ask for both methods to be conducted *at the same time.* The scenario is absurd, because the time and money spent for the "cheap" option would be certainly wasted as to the second MBB memory download, and it would be probably wasted as to the rerun of the paper ballots through optical scanners as well. (The issue of a potential conflict between, on the one hand, a "voting system originally used" rerun of paper ballots and, on the other hand, a manual recount of paper ballots is not before us.)

By the same token, a scenario where a candidate asked that manual recounts of the paper ballots and VVPAT printouts be done first *before* any

second runthroughs of the ballots through optical scanners or second download of the MBB sticks would be even more absurd. No one in his or her right mind wants to pay for a meaningless rerun of paper ballots through an optical scanner when workers have already gone through those ballots by hand and representatives from the various sides have had the opportunity to identify those paper ballots which they wish to challenge.

The remaining scenario is where a recount requester asks for the "voting system used originally" option first (i.e., a rerun through the scanner plus a second MBB download), and *then*, if he or she doesn't receive a hoped-for result, shell out the extra money for the expensive option of hand counting both paper ballots and VVPAT printouts. That is the only scenario using Trung Nguyen's proffered interpretation of "or both" that even begins to make rational sense. But it is also clear that, just by describing this option, it involves one requester receiving two, separate, successive, and *substantively independent* recounts. There would be, literally, two recountings, performed successively, of the paper ballots and two recountings, performed successively, of the electronic votes. Under Trung Nguyen's interpretation of the "or both" clause, each vote would have been counted no less than *three* times.

■ The logical and natural reading of section 15627's "or both" language (and the one adopted by the Orange County Registrar of Voters here) is that a recount requester can indeed "mix and match" recount *methods*, because different methods of voting are most efficiently audited by recount in different ways. If there is no reason to believe that any DRE electronic vote machines have been tampered with, and therefore there is no reason to believe that they have functioned inaccurately in a particular election, the most logical and efficient procedure is to allow the recount requester "both" the inexpensive option of a second downloading of the MBB memory sticks and the expensive option of a manual recount of all *paper* ballots.

Trung Nguyen asserts that such a logical and natural reading would allow recount requesters to "game" recounts by, in effect, asking for a different method of recounting in different precincts. Presumably, he envisions a scenario where, for example, a candidate might ask for a manual count of VVPAT printouts plus a scanner rerun of paper ballots in one precinct, then ask for a MBB download plus a hand count of paper ballots in another precinct. (Cf. § 15622 ["The request may specify the order in which the precincts shall be recounted."].)

Such a scenario, however, does not fall under the category of absurd results that the Legislature presumably did not intend. Such mixing and

matching of methods on a precinct-by-precinct basis would yield at least as *accurate* a tally as the original canvass. If, for example, hand counts of paper ballots in a given precinct changed results because, in the original canvass, legal votes had not been counted and illegal votes had, no one could reasonably complain: The recounted results of that precinct would be more accurate than before.

Moreover, the scenario of varying methods by precinct makes sense because the Legislature could reasonably conclude that precincts might differ in accuracy. If there is going to be election tampering, it is more likely to occur in a given area than another. (Boss Tweed no doubt had more influence in some precincts of 19th century New York than in others.) The Legislature could reasonably conclude that giving recount requesters the choice of subjecting some precincts to extra scrutiny (by having absentee ballots hand counted while opting for a MBB download of DRE votes) was not a bad idea.

Finally, any danger that gaming might lead to a substantively *inaccurate* recount is obviated by the ability of a candidate to bring an election contest under section 16601,[18] in which the court would have power to order a recount if "necessary for the proper determination of the contest." If, for example, asking for a manual recount of VVPAT printouts in precinct A while only asking for a download of MBB memory sticks in precinct B lead to an inaccurate tally, a trial court clearly has the power to correct that by ordering, as part of its powers in an election contest, a full recount of manual VVPAT printouts.

## 2. Section 19253

Having established that section 15627 allows a recount requester to "select" one of two methodologies of recounting, "or both," the question arises as to whether certain language in subdivision (b)(1) of another Elections Code statute, section 19253, strips that right away, and absolutely gives a recount requester no choice on the methodology of recounting electronic ballots, by mandating that the VVPAT printouts be "used" in all circumstances. (The language in subdivision (b)(1) is: "The voter verified paper audit trail shall be considered the official paper audit record and shall be used for the required 1-percent manual tally described in Section 15360 and any full recount.")

---

[18] Section 16601 provides in its entirety: "At the trial the ballots shall be opened and a recount taken, in the presence of all the parties, of the votes cast for the various candidates in all contests where it appears from the statements filed that a recount is necessary for the proper determination of the contest. The recount shall include a tabulation of all names written upon a ballot and which are subject to canvass pursuant to Chapter 7 (commencing with Section 15350) of Division 15."

Section 19253 is not part of the Legislature's scheme of rules governing recounts, found in sections 15600 et seq. Rather, it was placed in that part of the Elections Code governing approval by the Secretary of State of voting systems, section 19200.5 et seq.

While the recount methodology statute, subdivision (a) of section 15627, was enacted in 1994, section 19253 was enacted in 2005. (Stats. 2005, ch. 724.) Interestingly though, in the very same bill the Legislature also amended section 15627, by adding subdivision (b) to it. In other words, if the Legislature really intended to strip recount requesters of the option of having a recount but *not* having the VVPAT printouts manually counted, it passed up the perfect opportunity to do so.

A few words in regard to subdivision (b) of section 15627, added in 2005, are in order now: On the one hand, the text of 2005's subdivision (b) *is* confusing because, on its face, it *differentiates* "paper record copies" from "the voter verified paper audit trail of the electronically recorded vote." (Aren't they supposed to be the same thing?)[19] Since the case before us now does not involve a request for a manual count of VVPAT printouts, we need not explore here what the Legislature might have meant by differentiating "paper record copies" from "the voter verifies paper audit trail."

However, what is clear in the addition is that the Legislature was still operating on the premise that recount requesters would still be doing some *selecting*. Newly added subdivision (b) of section 15627 ends with the clause, ". . . as selected by the voter who requests the recount." The "selection" clause of section 15627 subdivision (b) is not compatible with the proposition that no valid recount could take place except if done under *one* prescribed method.

■ Of course, repeals by implication are disfavored. The rule is that there must be *no rational basis* for harmonizing the potentially conflicting statutes, and the two must be so inconsistent that they cannot have concurrent operation.[20] Recently, our high court has also looked to whether the later-in-time provision provides "undebatable evidence" of an attempt to supersede

---

[19] In the legislative history is a letter sent to Governor Schwarzenegger by the California Association of Clerks and Elections Officials, urging his veto of Senate Bill No. 370 (2005–2006 Reg. Sess.). Most of their points involve physical problems with requiring the VVPAT printouts in the first place. (For example, they pointed out the danger that VVPAT printouts might jam or print illegibly.) In the penultimate paragraph of their letter, though, the clerks and elections officials note this very confusion created by the addition of subdivision (b) to section 15627.

[20] Oft-quoted language to that effect is to be found in *Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476–477 [66 Cal.Rptr.2d 319, 940 P.2d 906]: " '[A]ll presumptions are against a repeal by implication . . . .' Absent an express declaration of legislative intent, we will find an implied repeal 'only when there is no rational basis for harmonizing the two potentially conflicting

the earlier provision, and an occupation-of-the-field test, which is whether the later-in-time provision constitutes a revision of the entire subject of the earlier, such that a court could say the Legislature intended to substitute the latter for the former.[21]

Here, there is absolutely no indication that the Legislature intended section 19253, subdivision (b)(1) to repeal section 15627, subdivision (a). They essentially occupy different fields. As the trial court noted, section 15627 specifically governs recounts, while section 19253 was the product of the Legislature's effort to insure that electronic voting machines were kept honest by requiring them to have a means of objective, hard verification of their otherwise ephemeral electronic data.

Besides the enigmatic subdivision (b) of section 15627, there is also some indication in section 19253 *itself* that the Legislature did not intend section 19253 to straitjacket recounts into always having a manual recount of VVPAT printouts. First, there is the operation of subdivision (a) of section 19253, which declares that "the electronic record of each vote" is to be "considered the official record of the vote, except as provided in subdivision (b)." Subdivision (b) of section 19253 makes reference (twice, in both subdivisions (b)(1) and (b)(2)) to "the required 1-percent manual tally" and "full recount." In other words, in normal elections where there is no recount, unless the required 1-percent manual tally shows a problem with the accuracy of the electronic record (here, the MBB memory sticks), *the electronic record is good enough to decide the election.* It would be highly counterintuitive for the Legislature to say that an electronic record is sufficient for elections without recounts, yet require manual tallies of VVPAT printouts in all recounts, regardless of whether there was any reason to think that the machines had not been 100 percent accurate.

Second, and more telling, is the language in subdivision (b)(2) of section 19253, which is easy to overlook if one only concentrates on the "shall be used for . . . any full recount" language of subdivision (b)(1). The language

statutes . . . , and the statutes are "irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation." ' " (Citations omitted.)

[21] Here is the relevant passage from *Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1038 [56 Cal.Rptr.3d 814, 155 P.3d 226]: "Notwithstanding the 'presumption against repeals by implication,' repeal may be found where (1) 'the two acts are so inconsistent that there is no possibility of concurrent operation,' or (2) 'the later provision gives undebatable evidence of an intent to supersede the earlier' provision . . . . Because 'the doctrine of implied repeal provides that the most recently enacted statute expresses the will of the Legislature' . . . , application of the doctrine is appropriate in those limited situations where it is necessary to effectuate the intent of drafters of the newly enacted statute. ' "In order for the second law to repeal or supersede the first, the former must constitute a revision of the entire subject, so that the court may say that it was intended to be a substitute for the first." ' " (Citations omitted.)

of section 19253, subdivision (b)(2) is: "The voter verified paper audit trail shall govern if there is any difference between it and the electronic record during a 1-percent manual tally or full recount."

Literally, subdivision (b)(2) of section 19253 provides for the possibility of a *difference* between the "voter verified paper audit trail" and "the electronic record" in a "full recount." Thus, if subdivision (b)(1) of section 19253 is read to absolutely preclude any valid recounts which do not involve the manual counting of the VVPAT printouts, it *contradicts* subdivision (b)(2).

Of course it makes good sense that the Legislature would intend that a manual count of VVPAT printouts would trump the electronic record any time where there *is* a "difference" between that manual count and the electronic record. But it does not make sense that the Legislature would totally deprive recount requesters of any option of having a recount without a full (and relatively expensive) manual count of the VVPAT printouts.

■ In many cases, of course, different statutes apply to different factual situations, perhaps even appearing to conflict with each other, and it is the duty of a trial judge to harmonize those different statutes if reasonably possible. As our Supreme Court observed in *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1086 [90 Cal.Rptr.2d 334, 988 P.2d 67]: "When we construe potentially conflicting statutes, our duty is to harmonize them if reasonably possible."[22]

■ Here, the trial court harmonized section 15627 (and subdivision (b)(2) of section 19253) with section 19253, subdivision (b)(1) by the means of reading the words "full recount" in section 19253 simply to refer to a recount *where the requester wanted* a manual count of the VVPAT printouts, as distinct from *every* valid recount. As the court put it, what the Legislature

---

[22] Among the materials of which Trung Nguyen has requested that we take judicial notice is an opinion of the Legislative Counsel issued March 19, 2007. While we take *notice* of the Legislative Counsel's opinion, we note, as the Supreme Court said in *Grupe Development Co. v. Superior Court* (1993) 4 Cal.4th 911, 922 [16 Cal.Rptr.2d 226, 844 P.2d 545], the opinion is only as "persuasive as its reasoning." On that score, however, we must conclude that the Legislative Counsel's opinion does not properly consider the mandate expressed in *Broughton* that statutes be harmonized if reasonably possible. Rather, the Legislative Counsel has simply opined that section 19253 simply trumps section 15627, subdivision (a) because it is later in time, and because requiring *all* recounts of DRE ballots to be by manual count of the VVPAT printouts is a "reasonable application" of the law. Unfortunately, the opinion does not consider interpretations that *preserve* section 15627's provisions that allow the recount requester to opt for different kinds of recounting methods. Nor does it mention any item in the legislative history that suggests the Legislature intended to repeal section 15627, subdivision (a).

was saying was, "If you want a manual recount of DRE voting . . . you have to use VVPAT." As long as all votes are in fact recounted (which is all that is required by section 15632, as we show below), a valid recount does not have to be a "full recount" under section 19253, complete with a manual counting of every VVPAT printouts. That solution avoids having an internal contradiction within section 19253 in which subdivision (b)(1) and (2) would collide with each other, and it avoids the outright negation of section 15627.

The trial court's reconciliation was not only insightful, but scholarly. It preserved a clear right of the recount requester under section 15627 to have electronic ballots recounted by means of the electronic record, while sensibly confining section 19253's "shall be used for . . . any full recount" language to the situation where a recount requester actually wants a manual recount of DRE votes. The reconciliation does the least damage to either statute, because it preserves the rights of *recount requesters* to select *how* to recount DRE votes, but respects the intended operation of section 19253, subdivision (b)(1) and (2) to have manual counts of the VVPAT printouts trump the electronic record.

The reconciliation is *consistent* with the legislative history of Senate Bill No. 370 (2005–2006 Reg. Sess.), which enacted section 19253 in 2005. On the one hand, that history is inconclusive because the Legislature did not appear to be concerned with the problem of potential conflict between section 15627 and section 19253. Page after page of the legislative history is devoted to the benefits of requiring DRE machines to have VVPAT's, so that the electorate can have confidence in the electronic results of an election. On the other hand, it does appear safe to say that the legislative history is certainly *devoid* of any indication that the Legislature wanted to *repeal* section 15627, subdivision (a). (In this appeal Trung Nguyen *opposed* the registrar's request that this court take judicial notice of the materials compiled by the Legislative Intent Service, Inc., constituting the legislative history of Senate Bill No. 370.)

There are two items in the legislative history that, in fact, *support* the trial court's interpretation against repealing section 15627. The strongest is on page 4 of the June 21, 2005 report on Senate Bill No. 370 (2005–2006 Reg. Sess.) of the Assembly Committee on Elections and Redistricting. That report made this reference in passing on the subject of the requirement to have VVPAT's in the first place: "This bill enacts into statute one of the standards for the use of VVPATs—that the paper record copy of the ballots cast on a DRE shall be used to conduct the one percent manual recount of ballots cast and *any manual recount requested by a voter*." (Assem. Com. on Elections

and Redistricting, Rep. on Sen. Bill No. 370 (2005–2006 Reg. Sess.) as amended May 23, 2005, p. 4, italics added.) The idea that the words "full recount" as used in section 19253 should be equated with "any manual recount requested by a voter" is, in substance, the trial court's interpretation.

Second, Governor Schwarzenegger's signing message stated, "I am signing Senate Bill 370 this year that *allows* the voter verified paper audit trail to be used for a recount and *requires* they be used for the 1-percent manual tally." (Italics added.) While the word "allows" might be interpreted to mean that the Senate Bills provided the apparatus necessary for VVPAT printouts to be mandated for all recounts, the tenor of the message more naturally suggests giving recount requesters an option that they previously did not enjoy.

### B. Even If Trung Nguyen's Interpretation of Sections 15627 and 19253 Were Correct, It Makes No Difference

However, even if the trial court's and our reading of the interaction between section 15627 and section 19253 were incorrect, and Trung Nguyen's "complex" statutory argument were the correct one, we would still be required to affirm the trial court's judgment in this elections contest.

■ Early on, our Supreme Court drew a distinction in election cases between "mandatory" election provisions and "directory" ones. (See *Gooch, supra,* 5 Cal.4th at p. 278, fn. 7, quoting *Rideout v. City of Los Angeles* (1921) 185 Cal. 426, 430 [197 P. 74] (*Rideout*).) The rule is: " '[A] violation of a mandatory provision vitiates the election, whereas a departure from a directory provision does not render the election void if there is a substantial observance of the law and no showing that the result of the election has been changed or the rights of the voters injuriously affected by the deviation.' " (*Gooch*, at p. 278, original italics omitted.)

■ The test for whether a provision is mandatory or directory is whether " 'the act enjoined goes to the substance or necessarily *affects the merits or results of the election* . . . .' " (*Gooch, supra,* 5 Cal.4th at p. 278, fn. 7, quoting *Rideout, supra,* 185 Cal. at p. 431, italics added.)

■ Further, as the *Gooch* court noted, the modern Elections Code often explicitly states whether a given provision is mandatory or directory, pointing out, for example, that provisions which tightly prescribe how absentee ballots are to be returned to the relevant election official are explicitly " 'mandatory, not directory.' " (*Gooch, supra,* 5 Cal.4th at p. 278, fn. 7, quoting former

§ 1013.) In the present case, neither section 15627 or section 19253 has any language making it mandatory.

So we turn to the question: Would any "deviation" from the proper operation of either section—at least under Trung Nguyen's proffered interpretation—affect the substance, merits or results of the election?

■ No. There is no question that both sections 15627 and 19253 are consistent with the legitimate possibility that most ballots in most elections will be counted electronically, without any manual recounting of the internal printouts. And from that fact we may deduce that an electronic recount—even if done in arguable contravention of section 19253 subdivision (b)(1), does not *necessarily* go, in the language of *Gooch* quoting *Rideout*, to the " 'substance or necessarily affects the merits or results of the election.' " (*Gooch, supra,* 5 Cal.4th at p. 278, fn. 7.) The election returns might be just as accurate based on the electronic record. Only if there are allegations of tampering or inaccuracy regarding the DRE machines would the need for VVPAT's go to the substance of the election.

As the *Gooch* case reminds us, even a deviation from a (merely) directory provision of the Elections Code will vitiate an election where that deviation might have changed the result. But any showing of the possibility of a changed result in this case is manifestly—indeed thunderously—lacking.

If Trung Nguyen had any basis to believe that the download of MBB data pursuant to the Janet Nguyen-Gerald Feather recount request resulted in any *inaccurate* data, he could have requested that the trial court order the VVPAT printouts be counted, and that request would have had to have been honored. (§ 16601; *Enterprise Residents Legal Action Against Annexation Com. v. Brennan, supra,* 22 Cal.3d 767 [construing predecessor to section 16601 to the effect that where statement of contest alleged enough illegal votes to make difference in election, trial court erred in not ordering recount when recount was requested].[23])

---

[23] In *Enterprise Residents*, the *trial* court *refused* to order a recount even though the contestants, in their statement of contest, charged that 2000 votes had allegedly gone missing on election night in a case where the margin of victory was less than 600. (See *Enterprise Residents, supra,* 22 Cal.3d at p. 773.) At trial it turned out that there was no real problem with the missing votes; there was a computer programming error which had been discovered and corrected and, according to the trial court's findings, the computer glitch "had no effect on the final official canvass." (*Id.* at p. 771.) So the trial court simply reaffirmed the results.

*Not* ordering the recount was error, held the Supreme Court. The high court reasoned that under the predecessor statute to section 16601 (former § 20084, substantively indistinguishable from the current statute), an election contestant had the right to compel a recount if "the grounds alleged in the statement of contest are such that a recount would be required if the allegations were true." (*Enterprise Residents, supra,* 22 Cal.3d at p. 771.)

Indeed, having *already* lost the election based on the Registrar's resolution of challenges to the paper ballots, Trung Nguyen had a strong incentive to ask the trial court to order such a manual recount of the VVPAT's. And, while such a manual recount might have cost him something (the initial estimate was $5,000), it seems safe to say that the $5,000 amount quoted for the recount has been easily dwarfed by his subsequent attorney fees.

That is, Trung Nguyen would have asked for a court-ordered recount *if* he thought that a manual counting of the VVPAT printouts would have made a difference. He obviously did not. As we have seen his lawyers affirmatively *opposed* the idea of a court ordered recount, and made it clear that that he was *not* seeking the relief of a manual recount of the VVPAT printouts.[24]

The strong inference that arises, then, from his clear disavowal of any request for the court to order a manual recount of the VVPAT internal printouts is that Trung Nguyen knew that there was very little likelihood that such a manual recount of the VVPAT's would make any difference—not even four votes worth of difference.[25] (Of course, if he *had* asked for such a manual recount, it would have been fatal to his hope of winning the election in court solely by virtue of an argument from noncompliance with §§ 15627 and 19253.)

 Our conclusion is confirmed by an examination of the case law concerning technical challenges to election results. Where technical deviations from Elections Code provisions have not posed the possibility of an actual change of result, the courts have uniformly upheld the results of the election as against any challenges based on those technical deviations. (E.g., *People v. Prewett* (1899) 124 Cal. 7, 11–13 [56 P. 619] [defective notice of

---

[24] The relevant colloquy from trial is set forth in footnote 12 above.

[25] A point emphasized, ironically, by materials of which Trung Nguyen asks us to take judicial notice, which center on the postelection postjudgment withdrawal of approval, by California's Secretary of State, of the particular DRE machines involved in this election (the "Hart Intercivic System 6.2.1") because the machines are, in Trung Nguyen's words, "subject to tampering and vulnerable to manipulation." (We grant all of Trung Nguyen's requests for judicial notice filed October 19, 2007.) These materials are relevant for the limited purpose of showing that *if* Trung Nguyen *had* found any evidence of tampering or manipulation in this election, we can be certain he would have presented it to the trial court. Beyond that limited purpose, however, they are not relevant. Are all elections involving that machine during the period of certification to be thrown out? Hardly. There is a difference between vulnerability to tampering (which goes to the Secretary of State's certification duties) and actual tampering (which could be the subject of an elections contest in court). The trial court was correct in recognizing that the Hart machine, vulnerable to tampering as it *theoretically* may have been, *was* nevertheless certified by the Secretary of State for use in *this* election and there was no evidence of *any* tampering.

school board election, and even opening of the polls one-half hour late was insufficient to invalidate election where "no one was prevented from voting by the delay . . ."]; *Rideout, supra*, 185 Cal. at pp. 430–432 [violation of statute requiring words "Municipal Ticket" on back of ballot and deviations from prescribed size of certain type were insufficient to annul two bond elections]; *In re East Bay etc. Water Bonds of 1925* (1925) 196 Cal. 725, 741 [239 P. 38] [arguably insufficient notice of bond election insufficient to invalidate it where electors were fully informed of the time, place and purpose of election and of each polling place]; *Davis v. County of Los Angeles* (1938) 12 Cal.2d 412, 426 [84 P.2d 1034] [misdescription of outlying precincts in notice of election was not material and "did not affect the result of the election"]; *Wilks v. Mouton* (1986) 42 Cal.3d 400, 412 [229 Cal.Rptr. 1, 722 P.2d 187] [violation of then nonmandatory statutes precluding third parties from mailing or delivering completed absentee ballots insufficient to invalidate where there was no finding of tampering or fraud].)

 The rule operates in the opposite direction as well: In cases where the violation of statutes even *might* have made a difference in who received the highest number of legal votes (and typically such cases center on mischief with the paper absentee ballots), the courts have not hesitated to throw out the results of the election and order a new one. (E.g., *Canales v. City of Alviso* (1970) 3 Cal.3d 118 [89 Cal.Rptr. 601, 474 P.2d 417] [more illegal votes cast than margin of victory, including nine illegal votes where court could not determine how they were cast, so judgment confirming election had to be reversed]; *Gooch, supra*, 5 Cal.4th 266 [admitted political organization engaged in various forms of election wrongdoing in regard to absentee ballots, including having representatives personally pressure absentee voters while they were voting; wrongdoing resulted in 930 illegal absentee ballots, but trial court could not determine with certainty how those illegal ballots were cast, so Supreme Court upheld trial judgment annulling election]; *Hardeman v. Thomas* (1989) 208 Cal.App.3d 153 [256 Cal.Rptr. 158] [because of intimidation of absentee voters by mayor and his supporters in city council election and number of illegal votes easily exceeded winner's margin of victory, trial court correctly annulled results of election and ordered a new one held].)

 The cases cited have this common thread: Where there is no showing that violations of nonmandatory elections provisions might have had any effect on the actual election results, the courts refused to annul the election, letting the winner (or winning ballot measure) stand. Because Trung Nguyen presented no evidence that the results of the recount were substantively incorrect, this case slots into that category.

The very point about Trung Nguyen's inability to show that the method of recount in this case made any difference in the actual returns came up at oral argument in the trial court. Trung Nguyen's counsel tacitly acknowledged that he hadn't shown that if the recount had been conducted the way he wanted (presumably a 100 percent manual recount of everything, including the VVPAT printouts) it would have made any difference. Rather, he pointed to another recount statute, section 15632, which, he argued, simply nullified the whole recount without regard to the actual results, thus restoring him as the original winner.

 Trung Nguyen's argument based on section 15632, when considered in the light of his statutory argument regarding sections 15627 and 19253, is manifestly unpersuasive. We quote the entirety of section 15632 in the margin.[26] Basically, section 15632 stands for the common sense idea that a recount cannot change the results from the "official canvass" and be the "official returns" unless, in the recount, the votes are counted "in each and every precinct."

The key sentence for our purpose, that is, the one Trung Nguyen necessarily relies on, is: "If the office, slates of presidential electors, or measure are not voted on statewide, the results of any recount which is not completed by *counting* the votes in each and every precinct in the jurisdiction within which votes were cast on the candidates for the office, on the slates of electors, or on the measure in question shall be declared null and void." (§ 15632, italics added.) The word is "counting," not "recounting." Any legitimate means of "counting" the first time satisfies the need in section 15632 for a "counting" the second time.

There is no doubt in this case that the recount *was* completed by "counting the votes in each and every precinct" in the first supervisorial district. The Registrar himself so testified and the trial judge specifically so found. (Said the judge: "First, it appears to me, let me just make a couple of findings, it

---

[26] Section 15632 provides in its entirety: "In lieu of the returns as reported in the official canvass, upon completion of the recount showing that a different candidate was nominated or elected, that a different presidential slate of electors received a plurality of the votes, or that a measure was defeated instead of approved or approved instead of defeated, there shall be entered the result of the recount in each precinct affected, which result shall, for all purposes thereafter, be the official returns of those precincts for the office, slates of presidential electors, or measure involved in the recount. If the office, slates of presidential electors, or measure are not voted on statewide, the results of any recount which is not completed by counting the votes in each and every precinct in the jurisdiction within which votes were cast on the candidates for the office, on the slates of electors, or on the measure in question shall be declared null and void. If the office, slates of presidential electors, or measure are voted on statewide, the results of any recount will be declared null and void where there is not recounted each vote cast for the office, slates, or measure in any county specified in the request for recount filed with the Secretary of State."

appears to me that all the votes were counted. That has been the testimony of the Registrar of Voters and I accept that.") They just weren't all "counted" *the way* that Trung Nguyen argues they were required to be counted on recount.[27]

Indeed, to accept Trung Nguyen's argument that not all the votes were "counted" pursuant to section 15632 would be to accept the utter absurdity that the DRE votes weren't "counted" in the *first* official canvass that he initially won. After all, the same method was used both times: The votes were no *less* "counted" the first time than they were "counted" the second.

### C. This Court Cannot Direct Judgment for Trung Nguyen Because There Is No Evidence He Received the Highest Number of Legal Votes in the Election

In *Bradley v. Perrodin, supra*, 106 Cal.App.4th 1153, the trial court awarded a city council seat to the losing candidate on the theory that the candidate would have won if listed first on the ballot. That was clear error, said the appellate court, making it clear that before a candidate can be awarded an office in an election contest, the candidate must have won the highest number of legal votes: "Although we agree Irving's election was properly annulled, we disagree that judgment was properly entered for Andrews, who was *judicially declared elected despite her failure to win the highest number of legal votes in the June runoff election.* Under section 16603, having found Irving, the winning candidate, disqualified for having committed misdeeds that failed to change the result of the election, the trial court should have entered judgment 'annulling and setting aside the election.' " (*Bradley, supra*, 106 Cal.App.4th at p. 1170, italics added, original italics omitted.)

A few pages later, the *Bradley* court elaborated on the sort of relief that can be given in an election contest: "Under sections 16203, 16402, and

---

[27] A kind of in passim argument made in Trung Nguyen's briefing is that not all the votes were included in the recount because the Registrar never looked at the 71 provisional ballots that he ascertained had been cast by *in*eligible voters. That argument borders on the frivolous. The Registrar was clearly forbidden by statute (§ 14310, subd. (c)) from counting those ballots in the first place. A reading of section 15630 that required *rejected* provisional ballots to be counted in a recount, even though they legally *couldn't* be counted in the official canvass in the first place, would be obtuse.

A related argument, with its origins in the statutory definitions of "voting system" (§ 362) and "software" (§ 355) is that because VVPAT's are necessarily internally generated by DRE machines, the electronic counting of the DRE votes (as distinct from the manual counting of the VVPAT's) in the recount meant that there wasn't even a recount by the "voting system originally used." That argument fails because of the absurdity that it would invalidate *every* election where DRE machines were used and the VVPAT's were not counted manually, which is every election without a recount. After all, if the "voting system originally used" means a manual count of the VVPAT printouts, then not even Trung Nguyen's initial win could survive and the entire election would have to be invalidated.

16703, *only illegal votes may be discarded in an election contest.* If the court finds, after discarding the illegal votes given for the winning candidate, that another candidate 'has the highest number of legal votes, the court shall declare that person elected.' (§ 16703.) Otherwise, if discarding the illegal votes given for the winning candidate would not change the result of the election, and the winning candidate is disqualified from taking office due to having committed offenses against the elective franchise, the court shall enter judgment 'annulling and setting aside the election.' (§ 16603.)" (*Bradley, supra,* 106 Cal.App.4th at p. 1172, italics added.)

Trung Nguyen forgets that the initial canvass using optical scanners for paper ballots counted ballots that were illegal votes and may not have counted ballots that were legal votes.[28] Optical scanners do not reject paper ballots with identifying marks, and sometimes they reject ballots as overvotes when a visual examination shows only a slip of the pen. Essentially, his argument on appeal is: Ignore what the manual recount of paper showed as regards the proper categorization of legal and illegal votes, just go back to the status quo ante recount. But the status quo at that point included illegal votes and didn't include legal votes, and we have no authority to install a candidate into a office who cannot show he obtained the highest number of legal votes in the election.

Under *Bradley*, it would be clear legal error for this court to declare Trung Nguyen the winner.

## V. CONCLUSION

We cannot accept that by enacting section 19253 the Legislature meant to repeal the rights afforded recount requesters in section 15627 to ask (and pay for) a manual recount of paper ballots while opting for the less expensive option of downloading the electronic record for electronic ballots, as provided in subdivision (a) of section 15627. But even if the Legislature *did* mean to repeal that right, and even if it did mean to mandate that *all* recounts have a hand counting of the VVPAT printouts, we would still be required to affirm the judgment in favor of Janet Nguyen. Trung Nguyen presented no evidence at trial that, if there had been a manual count of the VVPAT printouts, it would have made any difference. He presented no evidence that he received the highest number of legal votes.

---

[28] At oral argument in this appeal, counsel for Trung Nguyen was asked what evidence there was showing that Trung Nguyen had actually won the election. The most his counsel could point to was the original canvass.

## VI. DISPOSITION

We affirm the judgment. Respondents Janet Nguyen and the Orange County Registrar of Voters are to recover their costs on appeal.

Aronson, J., and Fybel, J., concurred.

The petition of all appellants for review by the Supreme Court was denied April 30, 2008, S161295. George, C. J., did not participate therein.